1  Victor A. Sahn (CA Bar No. 97299)
     vsahn@sulmeyerlaw.com
2  David S. Kupetz (CA Bar No. 125062)
     dkupetz@sulmeyerlaw.com
3  Jason D. Balitzer (CA Bar No. 244537)
     jbalitzer@sulmeyerlaw.com
4  **SulmeyerKupetz**
   A Professional Corporation
5  333 South Hope Street, Thirty-Fifth Floor
   Los Angeles, California  90071-1406
6  Telephone: 213.626.2311
   Facsimile: 213.629.4520
7
   Bankruptcy Counsel for Electronic Sensor
8  Technology, Inc., Debtor and Debtor in
   Possession
9

10

11            **UNITED STATES BANKRUPTCY COURT**

12            **CENTRAL DISTRICT OF CALIFORNIA**

13                 **NORTHERN DIVISION**

| | |
|---|---|
| In re | Case No. 9:14-bk-12347-PC |
| | Chapter 11 |
| Electronic Sensor Technology, Inc., a Nevada corporation, | SMALL BUSINESS CASE UNDER FRBP 1020 |
| Debtor. | **DEBTOR'S EMERGENCY "FIRST DAY" MOTION FOR ORDER AUTHORIZING DEBTOR TO INCUR POSTPETITION INDEBTEDNESS ON A SECURED BASIS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| | [Omnibus Declaration of William B. Wittmeyer in Support of "First Day" Motions Filed Concurrently Herewith] |
| Tax Id # 98-0372780 | **DATE:** [To Be Set] <br> **TIME:** [To Be Set] <br> **PLACE:** Courtroom 201 <br> U.S. Bankruptcy Court <br> 1415 State Street <br> Santa Barbara, CA  93101 |

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**TABLE OF CONTENTS**

Page

MOTION ..................................................................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES .....................................6

I. BACKGROUND ...............................................................................................6

II. PROPOSED POSTPETITION FINANCING.................................................6

III. ARGUMENT ................................................................................................10

IV. CONCLUSION.............................................................................................11

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1

## TABLE OF AUTHORITIES

2                                                                                      **Page**

3

4  <u>CASES</u>

5  <u>Bray v. Shenandoah S&L Ass'n (In re Snowshoe Co., Inc.),</u>
        789 F.2d 1085, 1088 (4th Cir. 1986) ............................................................10
6
   <u>In re Ames Dept. Stores,</u>
7        115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990)....................................................10

8  <u>In re Simasko Production Co.,</u>
        47 B.R. 444, 448-49 (D. Co. 1985).............................................................10
9

10

11  <u>STATUTES</u>

    11 U.S.C. § 364(d)(1) ....................................................................................10
12
    11 U.S.C. § 364(e). ........................................................................................9
13

14

15  <u>RULES</u>

    Fed. R. Bankr. P. 4001(c)(2)..........................................................................11
16

17

18

19

20

21

22

23

24

25

26

27

28

StutmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  TO THE HONORABLE PETER H. CARROLL, UNITED STATES BANKRUPTCY JUDGE,

2  THE OFFICE OF THE UNITED STATES TRUSTEE, AND OTHER INTERESTED

3  PARTIES:

4

5                                   MOTION

6          Electronic Sensor Technology, Inc. (the "Debtor" or "EST"), the above-captioned debtor and

7  debtor in possession, hereby moves this Court for an order authorizing the Debtor to incur postpetition

8  indebtedness on a secured basis[1] in accordance with the proposed loan agreement attached hereto as

9  Exhibit 1 (the "Financing Agreement").  The Debtor requires postpetition funding in order for the

10 Debtor to continue its operations, pay chapter 11 administrative expenses, implement its new business

11 plan, and move forward with the expeditious presentation of a chapter 11 plan in this case.  EST

12 currently anticipates filing a plan of reorganization providing for restructuring of its debt and equity

13 interests within 30-60 days of the commencement of this case

14         As set forth in the omnibus declaration of William B. Wittmeyer submitted in support of "first

15 day" motions (the "Wittmeyer Declaration"), the Debtor is in the process of implementing a new

16 business plan.  Further, the Debtor intends to expeditiously move forward with a chapter 11 plan to

17 restructure its debt and equity interests.  Postpetition financing is necessary in order for the Debtor to

18 reorganize and avoid a loss of value of property to the estate that would result from a sustained or

19 permanent shutdown of the Debtor's operations.  The Debtor is requesting that the Court approve

20 postpetition financing, in accordance with the Financing Agreement, on a secured basis up to the sum

21 of $1,875,000 and that the Court conduct an interim hearing with regard to such financing at the

22 earliest date in the week of October 27, 2014, with a final hearing to be conducted within

23 approximately two weeks thereafter.

24         In order to avoid immediate and irreparable harm, the Debtor requires authorization, pursuant

25 to Bankruptcy Rule 4001(c)(2), during the period from October 27 through November 14, 2014, to

26

27 [1] The Debtor has no prepetition secured debt.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  incur debt secured by a lien on all property of the estate in the amount of $61,901. This is necessary

2  primarily for payment of employee compensation and benefits (only to be paid for non-insider

3  employees who will continue to be employed by the Debtor), including payroll, healthcare, payroll

4  taxes, and any ordinary course employee related obligations, payment of utilities, insurance charges,

5  rent, and payment for materials required by the Debtor to meet any short term orders. A schedule of

6  these necessary expenditures for the period from October 27 through November 14, 2014, is attached

7  hereto as Exhibit 2. A copy of the Debtor's current cash flow budget/projection through January 31,

8  2015, is attached to the Wittmeyer Declaration as Exhibit 1 thereto.

9       The terms under which the Postpetition Lender has committed to provide postpetition funding

10  to the Debtor include: (1) the loan shall be secured by a lien on all property of the estate; (2) the loan

11  shall mature on the earlier of the effective date of a chapter 11 plan confirmed by the Court in this

12  case or May 31, 2015; (3) the loan shall accrue interest the rate of prime plus two points as set forth in

13  the Financing Agreement, with such interest not to be paid prior to maturity; and (4) following the

14  initial draw, advances under the Loan shall be made pursuant to monthly draw requests, subject to

15  lender approval as set forth in the Financing Agreement. As indicated above, a true and correct copy

16  of the proposed Financing Agreement is attached hereto as Exhibit 1.

17       This Motion is based on the accompanying Memorandum of Points and Authorities, the

18  omnibus declaration of William B. Wittmeyer submitted in support of "first day" Motions, all

19  judicially noticeable facts, and the arguments and representations of counsel.

20       The Debtor provides the following in accordance with Local Bankruptcy Rule 4001-2(b) to

21  indicate whether the proposed financing includes provisions providing for any of the following:

| Description of Provision |
| --- |
| ☐ Grant of cross collateralization. There is no such provision in the Financing Agreement. |
| ☐ There is no provision that binds the estate with respect to the validity, perfection, or amount of prepetition lien or debt, or the waiver of claims, except that the prepetition unsecured claim of Lender's affiliate, Halfmoon Bay Capital (the Lender entity still needs to be designated at this time), is undisputed in Debtor's Bankruptcy Schedules (which have already been filed) and Debtor agrees Halfmoon Bay Capital has an allowed prepetition unsecured claim in the amount of $6,790,442. |

| ☐ The Financing Agreement waives or limits estate's rights under 11 U.S.C. §506(c). |
| ☐ The Financing Agreement grants liens on claims for relief arising under 11 U.S.C. §§ 544, 545, 547, 548 and 549 |
| ☐ The Financing Agreement does not deem prepetition secured debt to be postpetition debt or use of postpetition loans to pay down lender's prepetition debt. |
| ☐ The Financing Agreement does not prime any secured lien. |

The table of contents of the proposed Financing Agreement identifies the location the various provisions in the agreement, including without limitation: interest rate (Section 3.1), maturity (Section 2.1), draw procedure (Section 2.2), initial draw (Section 2.3), conditions of loan (Section 4), and events of default (Section 12).

A true and correct copy of the current draft of the proposed initial financing order sought by the Debtor under this Motion is attached hereto as Exhibit 3.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order:

1.     Setting the Motion for initial hearing on an expedited basis for October 28, 2014 or as soon thereafter as is practicable for the Court;

2.     Approving postpetition interim financing on a secured basis to the extent of $61,901 to avoid immediate and irreparable harm;

3.     Setting a final hearing on the Motion at the earliest available time allowing for at least 14 days after service of the Motion;

4.     Authorizing the Debtor to incur postpetition financing on a secured basis in the amount $1,875,000, with such financing to be advanced pursuant to the draw procedures in the Financing Agreement, with such financing to mature on the earlier of the effective date of any plan confirmed in the Debtor's chapter 11 case or May 31, 2015, with such funding to accrue interest at the rate set forth in the Financing Agreement, and with such interest not to be paid prior to maturity;

5.     Authorizing the Debtor to use the proceeds generated by the financing to pay its ongoing operating expenses incurred in the ordinary course of business and administrative expenses incurred in connection with this case;

6.     Finding that the Postpetition Lender is entitled to the protections afforded under 11

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1 | U.S.C. § 364(e) in the final order approving the Financing Agreement; and

2 |      6.     Granting such other and further relief as the Court deems just and proper.

3 |

4 |                                   Respectfully submitted,

5 |                                     **Sulmeyer**Kupetz

6 |                                     A Professional Corporation

7 | DATED:  October 23, 2014          By:   */s/ David S. Kupetz*

8 |                                 David S. Kupetz

                                Attorneys for Electronic Sensor Technology, Inc.,

9 |                                 Debtor and Debtor in Possession

10

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DKUPETZ\2432672.1

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.
### BACKGROUND

On October 23, 2014 (the "Petition Date"), Electronic Sensor Technology, Inc. (the "Debtor" or "EST"), filed a voluntary petition under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), commencing the above-captioned bankruptcy reorganization case. The Debtor continues to manage and operate its business as a debtor in possession.

The Debtor is a technology company. The Debtor manufactures a high speed gas chromatography instrument. Gas chromatography (GC) is a common type of chromatography used in analytical chemistry for separating and analyzing compounds that can be vaporized without decomposition. Typical uses of GC include testing the purity of a particular substance, or separating the different components of a mixture (the relative amounts of such components can also be determined). In some situations, GC may help in identifying a compound.

Severe liquidity problems and the need for the Debtor to restructure its debts and equity interests and recapitalize its business led to the commencement of this reorganization case. The Debtor has arranged for postpetition financing, subject to Court approval, that will allow it to meet ongoing expenses and chapter 11 administrative expenses, implement its new business plan, and facilitate the Debtor's expeditious presentation of a chapter 11 plan in this case. Without postpetition financing, the Debtor would be forced to shut down its operations.

The Debtor is what should properly be characterized as an early stage technology company. Thus, in the ordinary course of its business, the Debtor has been and is currently dependent upon financing to fund its operations. Moreover, EST is in the process of repositioning its business model in order to build what it believes will be a viable and successful business platform. Additional funding is required to allow EST to continue to operate its business in the ordinary course of business, pay administrative expenses connected with the chapter 11 case, and advance the reorganization of EST.

### II.
### PROPOSED POSTPETITION FINANCING

The Debtor is in the process of repositioning its business and is developing an operating plan

1  for moving forward. This change in EST's business model combined with the necessary restructuring

2  of EST's debt and equity interests under a chapter 11 plan will allow EST to move forward on a viable

3  basis, with the opportunity to achieve significant success in the future. In order to execute this plan,

4  and avoid a significant/devastating loss of value of the property of the estate that would result from a

5  shut down of the Debtor's operations, the Debtor is requesting the Court to approve financing on a

6  secured basis up to the sum of $1,875,000 and that the Court conduct an interim hearing with regard to

7  such financing at the earliest available date during the week of October 27, 2014 (along with the other

8  "first day" motions), with a final hearing to be conducted approximately two weeks thereafter.

9       In order to avoid irreparable harm, the Debtor requires authorization during the weeks of

10  October 27 through November 14, 2014 (the initial weeks of this case), to incur debt secured by a lien

11  on all property estate in the amount of $61,901. These funds are to be used primarily for payments of

12  employee compensation and benefits (only to be paid for employees that will continued to be

13  employed by the Debtor), including payroll, healthcare, payroll taxes, and any ordinary course of

14  employee obligations, and payments of utilities, insurance charges, and rent, and payment for

15  materials required by the Debtor to meet any short term orders. A schedule of these necessary

16  expenditures for the period from October 27 through November 14, 2014, is attached hereto as Exhibit

17  2. These expenditures are necessary to avoid immediate and irreparable harm.

18       Under the circumstances, the Debtor believes that the terms of the proposed postpetition

19  financing are very favorable and the best and only financing available to the Debtor. The proposed

20  Financing Agreement is attached hereto as Exhibit 1 and is incorporated herein by this reference.

21  Under the Financing Agreement, necessary funding will be advanced to the Debtor on a monthly basis

22  pursuant to draw requests, subject to lender approval. The initial draw is in the sum of $61,901. The

23  Debtor's cash flow budget/projections for the period from October 27, 2014 through January 31, 2015

24  is attached as Exhibit 1 to the omnibus declaration of William B. Wittmeyer submitted in support of

25  "first day" motions.

26       The proposed Financing Agreement contains provisions requiring the filing of a chapter 11

27  plan within 60 days (unless otherwise agreed by the parties) (Section 6), the use of loan funds (Section

28  7), and a carve-out for allowed administrative expenses (Section 8). The proposed Financing

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  Agreement also provides for a lien on avoidance claims (Section 3.4) (the Debtor does not believe any

2  such claims exist), and a prohibition against surcharge under Section 506(c), subject to the carve-out

3  for payment of allowed administrative claim (Section 3.5). Under the proposed Financing Agreement,

4  no interest or other payments are required prior to maturity of the loan as long as the Debtor is

5  making progress toward confirmation of a chapter 11 plan (Section 3.1(b)). Maturity of the loan is the

6  earlier of confirmation of a Plan or May 31, 2014 (Section 2.1). It is anticipated by the parties to the

7  proposed Financing Agreement that the new postpetition secured debt will be converted to preferred

8  equity under the Plan (Section 6).

9         The Debtor does not have any prepetition secured debt. The Debtor made exhaustive efforts to

10  obtain the financing necessary for the Debtor's ongoing operations and in order to preserve, protect,

11  and enhance the value of the Debtor's business.

12         For the past three years EST has sought to secure investment, in the form of equity or debt,

13  from both domestic and foreign sources. Venture capital investors rejected the investment opportunity

14  because EST was a publicly listed company, trading on the pink sheets.   Hedge fund and special

15  situation investors were unwilling to invest because the trading volume and valuation were such that

16  their investment would not be liquid. The Debtor contacted investors who provide private investment

17  in public equity (PIPE) and, again, no interest because of the market value of EST and the low trading

18  volume.

19         EST's bank, East West Bank, has declined to provide any financing since the company's

20  balance sheet is negative and EST's operations are unprofitable.   For the same reasons, other

21  institutional lenders are unwilling to lend to EST.

22         The only source of necessary funds for EST is Halfmoon Bay Capital, Ltd. or one of its

23  affiliates ("Halfmoon"). Further, Halfmoon is only willing to provide funding through debtor in

24  possession financing. Halfmoon is the largest existing unsecured creditor of EST holding a claim in

25  the approximate amount of $6,790,442 and holds in excess of 50% of the equity security interests of

26  EST. The principal of Halfmoon is Tan Sri Azmi. At this time, he is determining the identity of his

27  affiliate that shall be the Lender.

28         The availability of postpetition funding from Halfmoon on a secured basis is in the best

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  interests of the Debtor's estate. Such funding will preserve, protect, and enhance the value of the

2  estate and will maximize value and allow the Debtor to move forward promptly with the

3  administration of this case and the presentation of a chapter 11 plan.

4      Halfmoon has made this funding available to the Debtor in good faith as contemplated under

5  Bankruptcy Code Section 364(e). The Financing Agreement is the result of an arms-length

6  negotiations between Halfmoon and the Debtor, each of which was represented by its own counsel in

7  the transaction. Halfmoon is thus entitled to the protections afforded good faith lenders under Section

8  364(e).

9      The Debtor anticipates moving forward promptly with a plan of reorganization providing for a

10  restructuring of the Debtor's debt and equity interests. Postpetition financing is necessary (i) to fund

11  the Debtor's ongoing business operations in the ordinary course, (ii) to pay expenses of administration

12  connected with the Debtor's chapter 11 case, and (iii) for the Debtor to proceed promptly and facilitate

13  presentation of the Debtor's plan of reorganization.

14      The Debtor has been unable to obtain credit from any source under terms more favorable to the

15  Debtor than the terms of the proposed postpetition financing on a secured basis. The Debtor does not

16  believe that the proposed, necessary postpetition financing is available other than on a secured basis.

17  The Debtor has been actively engaged in seeking financing for EST and has determined that the only

18  financing available to the company is from Halfmoon. Financing is not available to EST under any

19  terms more favorable than those set forth above.

20      Absent the contemplated financing, the Debtor will be forced to cease operations, lose all

21  value as a going concern, face a significantly diminished likelihood of an opportunity for

22  reorganization. In contrast, the Debtor believes that the continued operation and reorganization of the

23  Debtor will increase the value of the Debtor and its assets and avoid a devastating loss in value that

24  would otherwise result.

25      Accordingly, the Debtor believes the proposed financing is in the best interests of the estate

26  since (i) the proposed financing is necessary and appropriate in order to allow the Debtor to proceed

27  with the administration of this case and with the prompt presentation of a chapter 11 plan, (ii)

28  providing the proposed financing on a secured basis and in accordance with the proposed terms set

StulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

forth in the Financing Agreement is reasonable under the circumstances, and (iii) the proposed financing is in the best interests of existing creditors and will enhance the Debtor's ability to reorganize and avoid the devastating loss of value that could occur if the Debtor was forced to cease operations.

## III.
## ARGUMENT

The Financing should be approved because the terms thereof satisfy the requirements of section 364(d)(1) of the Bankruptcy Code. Under that provision, if a debtor in possession is unable to obtain credit from any other source and its existing secured creditors are adequately protected, it may incur postpetition financing secured by a lien that is senior to the existing liens.

The Debtor's proposed financing meets this standard. First, as set forth in the declaration of William B. Wittmeyer submitted in support of "first day" motions, the Debtor has been unable to obtain credit from any source under terms more favorable to the Debtor or the estate. The Debtor has exhaustively explored obtaining financing on more favorable terms. The Debtor is certain at this point that the proposed, necessary postpetition financing is only available if secured by a lien on property of the estate. Moreover, it is well established that the "statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." See, e.g., Bray v. Shenandoah S&L Ass'n (In re Snowshoe Co., Inc.), 789 F.2d 1085, 1088 (4th Cir. 1986). Rather, in determining whether to approve a postpetition financing transaction, the Court should give broad deference to the business decision of a chapter 11 debtor, particularly with respect to a debtor's business judgment regarding the need for and proposed use of funds. See, e.g., In re Simasko Production Co., 47 B.R. 444, 448-49 (D. Co. 1985) (authorizing interim financing agreement where debtor's best business judgment indicated financing was necessary and reasonable for the benefit of the estate); In re Ames Dept. Stores, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (with respect to postpetition credit, courts "permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties").

Second, the Debtor does not have any existing secured creditors and the continued operation

StulmeyerKupetZ, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  and reorganization of the Debtor will increase the value of the Debtor and its assets, and avoid the

2  devastating loss in value that could otherwise result.

3      The Motion is brought pursuant to Bankruptcy Rule 4001(c)(2) and, as set forth above, the

4  Debtor seeks interim approval of funding in the amount of $61,901 to avoid immediate and irreparable

5  harm and also requests that the Court set a final hearing on the Motion.

6  **IV.**<br>**CONCLUSION**

7

8      For the foregoing reasons, the Debtor respectfully requests that the Court enter an order

9  granting interim relief under the Motion, and that the Court set the Motion for final hearing.

10

11                    Respectfully submitted,

12                    **Sulmeyer**Kupetz
                     A Professional Corporation

13

14  DATED:  October 23, 2014          By:  */s/ David S. Kupetz*
                                          _____

15                                        David S. Kupetz
                                         Jason D. Balitzer

16                                        Bankruptcy Counsel for Electronic Sensor
                                         Technology, Inc., Debtor and Debtor In Possession

17

18

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

# EXHIBIT 1

---

# LOAN AND SECURITY AGREEMENT

## BY AND BETWEEN

---

### AND

### ELECTRONIC SENSOR TECHNOLOGY, INC.
### (DEBTOR IN POSSESSION)

---

# TABLE OF CONTENTS

Page

1. ACCOUNTING AND OTHER TERMS ......................................................................2

2. LOAN AND TERMS OF PAYMENT ......................................................................2
   2.1    Loan. ...........................................................................................................2
   2.2    Draw Procedure. ........................................................................................2
   2.3    Initial Draw. ...............................................................................................3

3. RELIANCE BY LENDER. ......................................................................................3
   3.1    Interest Rate, Payments. ...........................................................................3
   3.2    Fees. ............................................................................................................4
   3.3    Affirmation of Claim. ................................................................................4
   3.4    Post-Petition Liens Shall Attach To All Claims. ....................................4
   3.5    No Surcharge ..............................................................................................4
   3.6    No Rights of Recoupment, Setoff, etc. ....................................................4

4. CONDITIONS OF LOAN ........................................................................................4
   4.1    Conditions Precedent to Loan. .................................................................4
   4.2    Conditions Precedent to all Advances. ....................................................5

5. CREATION OF SECURITY INTEREST ..................................................................5
   5.1    Replacement Lien; Administrative Claim. ..............................................5

6. PLAN. ......................................................................................................................5

7. USE OF FUNDS .......................................................................................................5

8. CARVEOUT. ............................................................................................................6

9. REPRESENTATIONS AND WARRANTIES ...........................................................6
   9.1    Due Organization and Authorization. .....................................................6
   9.2    Collateral. ...................................................................................................6
   9.3    Regulatory Compliance. ............................................................................6
   9.4    Subsidiaries. ...............................................................................................7
   9.5    Full Disclosure. ..........................................................................................7
   9.6    Miscellaneous. ...........................................................................................7

10. AFFIRMATIVE COVENANTS ...............................................................................7
    10.1   Government Compliance. ..........................................................................7
    10.2   Financial Statements, Reports, Certificates. ..........................................8
    10.3   Taxes. ..........................................................................................................8
    10.4   Insurance. ...................................................................................................8
    10.5   Further Assurances. ...................................................................................8

11. NEGATIVE COVENANTS .................................................................................8
    11.1 Dispositions. ...............................................................................................8
    11.2 Changes in Business, Ownership, Management or Business Locations. ..................9
    11.3 Mergers or Acquisitions. .............................................................................9
    11.4 Indebtedness. .............................................................................................9
    11.5 Encumbrance. ............................................................................................9
    11.6 Distributions; Investments. ..........................................................................9
    11.7 Transactions with Affiliates. .......................................................................9
    11.8 Subordinated Debt. ....................................................................................9
    11.9 Compliance. ..............................................................................................9

12. EVENTS OF DEFAULT ...............................................................................10
    12.1 Payment Default. ......................................................................................10
    12.2 Covenant Default. .....................................................................................10
    12.3 Attachment. .............................................................................................10
    12.4 Other Agreements. ....................................................................................10
    12.5 Judgments. ..............................................................................................10
    12.6 Misrepresentations. ...................................................................................11
    12.7 Bankruptcy. .............................................................................................11

13. LENDER'S RIGHTS AND REMEDIES ..........................................................11
    13.1 Rights and Remedies. ................................................................................11
    13.2 Power of Attorney. ....................................................................................12
    13.3 Accounts Collection. .................................................................................12
    13.4 Lender Expenses. ......................................................................................12
    13.5 Lender's Liability for Collateral. ................................................................12
    13.6 Remedies Cumulative. ..............................................................................12
    13.7 Demand Waiver. .......................................................................................13

14. NOTICES ....................................................................................................13

15. CHOICE OF LAW , VENUE AND JURY TRIAL WAIVER ...............................14

16. GENERAL PROVISIONS ..............................................................................14
    16.1 Successors and Assigns. ............................................................................14
    16.2 Indemnification. .......................................................................................14
    16.3 Time of Essence. ......................................................................................14
    16.4 Severability of Provision. ...........................................................................14
    16.5 Amendments in Writing, Integration. ..........................................................15
    16.6 Counterparts. ...........................................................................................15
    16.7 Survival. ..................................................................................................15
    16.8 Confidentiality. .........................................................................................15
    16.9 Attorneys' Fees, Costs and Expenses. .........................................................15
    16.10 No Cross-Collateralization. ......................................................................15

14

17.   DEFINITIONS..................................................................................................15
      17.1   Definitions. ..........................................................................................15

This **LOAN AND SECURITY AGREEMENT** dated October __, 2014, between _____, a _____ ("Lender"), ELECTRONIC SENSOR TECHNOLOGY, INC., a Nevada corporation ("Borrower"), as debtor in possession, provides the terms on which Lender will lend to Borrower and Borrower will repay Lender.

## RECITALS

A.    Borrower filed a voluntary petition under chapter 11 of the Bankruptcy Code (as defined below) on October __, 2014 in the United States Bankruptcy Court, Central District of California, Northern Division (the "Bankruptcy Court"), case number _____ (the "Bankruptcy Case") and is a debtor in possession.

B.    Borrower has requested that Lender provide funding in order to allow Borrower to continue operations, meet operating expenses in the ordinary course of business, fund chapter 11 administrative expenses, and facilitate expeditious presentation of a plan of reorganization to be approved by the Bankruptcy Court with jurisdiction over Borrower's Bankruptcy Case.

C.    Subject to the terms and conditions set forth below, Lender has agreed to advance to Borrower One Million Eight Hundred Seventy Five Thousand Dollars ($1,875,000.00) upon the terms and conditions set forth in this Agreement.

D.    Now, theretofore, in consideration of the mutual conditions and agreements set forth in this Agreement, and for good and valuable consideration, the receipt of which is hereby acknowledged, Lender and Borrower hereby agree as follows:

1.    <u>ACCOUNTING AND OTHER TERMS.</u>

Accounting terms not defined in this Agreement will be construed following GAAP. Calculations and determinations must be made following GAAP. The term "financial statements" includes the notes and schedules. The terms "including" and "includes" always mean "including (or includes) without limitation," in this or any Loan Document.

2.    <u>LOAN AND TERMS OF PAYMENT</u>

2.1    <u>Loan.</u>

Subject to approval of the Bankruptcy Court presiding over the Bankruptcy Case and Lender's sole and absolute discretion to make advances, Lender shall advance to Borrower $1,875,000 (the "Loan") as set forth in Section 2.2 below. The Loan shall mature upon confirmation of a Plan of Reorganization for Borrower or May 31, 2015, whichever shall occur first.

2.2    <u>Draw Procedure.</u>

Subject to the terms and conditions of this Agreement, Borrower shall submit to Lender a written draw request by the 20th day of each month during the period covered by this Agreement. Each Request for advance shall be satisfactory to the Lender in form and substance. Provided Lender is agreeable to making such advance, which advance(s) Lender shall have no obligation to make and shall be in Lender's sole and absolute discretion and Lender has received appropriate and acceptable bank wire instructions from Borrower, than not later than 5 P.M. Pacific Standard Time by the 28th day of each month, and if such date falls on a weekend than on the business day immediately preceding such date ("Advance Date"), the Lender shall make the advance available to Borrower in immediately available funds by deposit or credit to an account in Borrower's name, by bank wire payable directly to Borrower or to a payee designated by Borrower, or by such other method as may be designated by the Lender, as designated by the Lender. All advances shall be evidenced by a Promissory Loan Note, the form of which is attached as Exhibit "A" hereto.

Lender shall advise Borrower in writing prior to the end of the month during which a draw request is made which items Lender does not approve in a draw request or in the event Lender elects not to fund the draw request in its entirety. Lender retains the right to refuse any and all draw requests. If notice of such disapproval is not received by Borrower prior to the end of the month in which a timely draw request is made the draw request shall be deemed approved in its entirety.

2.3    Initial Draw.

Promptly following the commencement of Borrower's Bankruptcy Case, subject to approval of the Bankruptcy Court, Lender shall advance $61,901 to Borrower.

3.    RELIANCE BY LENDER.

The Lender may conclusively presume that all requests, statements, information, certifications, and representations, whether written or oral, submitted or made by Borrower or any of its agents to the Lender in connection with the Loan are true and correct, and the Lender shall be entitled to rely thereon, without investigation or inquiry of any kind by the Lender, in disbursing the Loan proceeds and taking or refraining from taking any other action in connection with the Loan. Without limiting the generality of this Section, Borrower acknowledges and agrees that (1) it is in the best interest of Borrower that the Lender respond to and be entitled to rely upon Requests for Advances that are given by Borrower in writing, by telephone, or by other telecommunication method acceptable to the Lender without the Lender having to inquire into the actual authority of the Person making such request and purporting to act on behalf of Borrower; (2) therefore, the Lender may conclusively rely on any and all Requests for Advances (whether made in writing, by telephone, or by other telecommunication method) made by (i) any Person who purports to be one of the agents of Borrower who has been authorized to act for Borrower in any resolution or other form of authorization of any kind delivered to the Lender (a "Borrower Authorization"); and (ii) any other Person who the Lender in good faith believes to be authorized to act for Borrower (notwithstanding the fact that such other Person is not identified in any Borrower Authorization); and (3) Borrower assumes all risks arising out of any lack of actual authority by any Person submitting any form of Request for Advance (whether made in writing, by telephone, or by other telecommunication method) to the Lender and the Lender's reliance on such Request for Advance.

3.1    Interest Rate, Payments.

(a)    Interest Rate.  The Loan shall accrue interest on the outstanding principal balance at a per annum rate of 2.00 percentage points above the Wall Street Journal Prime Rate. After an Event of Default, Obligations accrue interest at 5 percent above the rate effective immediately before the Event of Default. The interest rate increases or decreases when the Prime Rate changes. Interest is computed on a 360 day year for the actual number of days elapsed.

(b)    Payments.  Borrower shall have no payment obligations under the Loan prior to maturity of the Loan as long as it continues to make progress toward confirmation of a Plan of Reorganization and, under such circumstances, no interest payments shall be made prior to maturity of the Loan.

(c)    In no event shall the interest rate or rates payable under this Agreement, plus any other amounts paid in connection herewith, exceed the highest rate permissible under any law that a court of competent jurisdiction shall, in a final determination, deem applicable. Borrower and Lender, in executing and delivering this Agreement, intend legally to agree upon the rate or rates of interest and manner of payment stated within it; provided, however, that, anything contained herein to the contrary notwithstanding, if said rate or rates of interest or manner of payment exceeds the maximum allowable under applicable law, then, ipso facto, as of the

date of this Agreement, Borrower is and shall be liable only for the payment of such maximum as allowed by law, and payment received from Borrower in excess of such legal maximum, whenever received, shall be applied to reduce the principal balance of the Obligations to the extent of such excess.

### 3.2    Fees.

Intentionally omitted.

### 3.3    Affirmation of Claim.

Lender's related entity, Halfmoon Bay Capital, Ltd., asserts a pre-petition claim. As set forth in Borrower's Bankruptcy Schedules, Halfmoon Bay Capital, Ltd., shall have a valid and non-avoidable allowed unsecured claim in the Bankruptcy Case in the amount of $6,790,442 upon final order approving this Loan.

### 3.4    Post-Petition Liens Shall Attach To All Claims.

Upon final Bankruptcy Court order approving financing, all of the security interests and liens referred to above, together with those granted and conveyed herein, shall attach to the following property in addition to the assets defined herein: (i) any claims arising under Bankruptcy Code sections 502(d), 544, 545, 547, 548, 549, 550, 553 ("Avoidance Claims"), or (ii) any monies recovered in connection with successful prosecution or settlement of Avoidance Claims ("Avoidance Proceeds").

### 3.5    No Surcharge

In consideration of this Revolving Facility and the carve out as set forth below, in no event shall any costs or expenses of administration be imposed upon the Lender, or any of the Collateral pursuant to Bankruptcy Code sections 506(c), 105(a), or otherwise, without the prior written consent of the Lender, and no such consent shall be implied from any action, inaction or acquiescence by Lender. Lender shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

### 3.6    No Rights of Recoupment, Setoff, etc.

The Debtor, and/or any subsequently appointed trustee, shall be liable to repay the Postpetition Debt in accordance with the terms of the Loan herein without any right of rescission, setoff, counterclaim, or defense for any reason, unless and to the extent expressly otherwise agreed to in writing by the Lender. In no event shall the Debtor or any appointed trustee be authorized to offset or recoup any amounts owed, or alleged to be owed by Prepetititon Agent or the Lender to the Debtor's estate against any of the Postpetititon Debt unless and to the extent expressly otherwise agreed to in writing by Lender.

## 4.    CONDITIONS OF LOAN

### 4.1    Conditions Precedent to Loan.

Lender's obligation to make the Loan initial and any subsequent advance under the Loan is subject to the condition precedent that the transactions, and security interests contemplated herein be approved by the Bankruptcy Court, entry of Order to that effect and that Lender receive the agreements and documents

4.2    Conditions Precedent to all Advances.

Lender shall have no obligation to make any Loan advances, such advances to be at the sole and absolute discretion of the Lender. In addition to the foregoing, Lender's shall only consider making an advance under the Loan including the initial advance, provided the representations and warranties in Section 5 are materially true on the date a request for advance is placed and on the effective date of each Credit Extension and no Event of Default may have occurred and be continuing, or result from the Credit Extension. Each advance under the Loan is Borrower's representation and warranty on that date that the representations and warranties of Section 5 remain true.

5.    CREATION OF SECURITY INTEREST

Borrower grants Lender a continuing security interest in all presently existing and later acquired Collateral to secure all Obligations and performance of each of Borrower's duties under the Loan Documents. Except for Permitted Liens, any security interest will be a first priority security interest in the Collateral. If this Agreement is terminated, Lender's lien and security interest in the Collateral will continue until Borrower fully satisfies its Obligations. The security interest granted herein is intended to be on a first priority basis, which the parties understand can only occur upon Bankruptcy Court approval and entered Order authorizing and approving same.

5.1    Replacement Lien; Administrative Claim.

If during the Bankruptcy Case, Lender's security interest and lien is not sufficient to fully secure Borrower's Obligations to Lender, then Lender's claim for such insufficiency shall be an administrative expense in accordance with the provisions of Sec. 364(c)(1) of the Bankruptcy Code, with superpriority over all other administrative expenses of the kind specified in or arising or ordered pursuant to Bankruptcy Code sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c) (upon entry of Final Financing Order), 507(a), 507(b), 546(c), 726, or 1114, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, attachment or otherwise, except for: i) such allowed quarterly fees owed by Borrower to the United States Trustee pursuant to 28 U.S.C. Section 1930 and ii) allowed fees and costs incurred by the Borrower's counsel in the Bankruptcy Case in an amount not to exceed Fifty Thousand Dollars ($50,000), and such priority shall continue notwithstanding any appointment of a trustee or any conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code and will be prior to the administrative expenses of any superseding Chapter 7 case. Borrower hereby authorizes Lender to file any document it deems necessary to perfect its security interest in the Collateral, including but not limited to UCC-1 financing statements and any applicable amendments or continuation statements.

6.    PLAN.

Borrower shall file its Chapter 11 Plan (the "Plan") and Disclosure Statement within 60 days or less after Bankruptcy Court's final approval of the Loan. Borrower shall obtain confirmation the Plan by May 31, 2015. These deadlines may be extended by written agreement of the parties to this Agreement. It is anticipated that the secured debt incurred by Borrower pursuant to the Loan shall be converted to preferred equity under the Plan.

7.    USE OF FUNDS.

Borrower may use the Loan funds to meet operating expenses in the ordinary course of business and pay chapter 11 administrative expenses (subject to Court approval to the extent required by applicable law).

Borrower's cash flow budget/projection (the "Budget") for the period from October 27, 2014, through January 31, 2015, is attached hereto as Exhibit 1. Lender consents to Borrower's use of Loan funds in accordance with the Budget, subject to the draw procedures set forth in section 2.2 of this Agreement. The Budget may be amended, adjusted, and extended by agreement of the parties hereto.

8.    CARVEOUT.

        In order to ensure that allowed chapter 11 administrative expenses are paid, to the extent approved by Court order after appropriate notice, there shall be a carve-out from Lender's security interests under the Loan to the extent of and to allow for payment of all allowed chapter 11 administrative expenses incurred through the maturity of the Loan. Notwithstanding the foregoing, in the event of default and termination of the Loan prior to the maturity date, there shall be a carveout from Lender's security interests to the extent of $50,000 for allowed administrative expenses of professionals employed by Borrower incurred after the date of termination.

9.    REPRESENTATIONS AND WARRANTIES

        Borrower represents and warrants as follows:

        9.1    Due Organization and Authorization.

                Borrower is duly existing and in good standing in its state of formation and qualified and licensed to do business in, and in good standing in, any state in which the conduct of its business or its ownership of property requires that it be qualified.

                The execution, delivery and performance of the Loan Documents have been duly authorized, and do not conflict with Borrower's formation documents, nor constitute an event of default under any material agreement by which Borrower is bound. The transactions contemplated herein have been approved by the Bankruptcy Court.

        9.2    Collateral.

                Borrower has good title to the Collateral, free of Liens except Permitted Liens.

        9.3    Regulatory Compliance.

                Borrower is not an "investment company" or a company "controlled" by an "investment company" under the Investment Company Act. Borrower is not engaged as one of its important activities in extending credit for margin stock (under Regulations T and U of the Federal Reserve Board of Governors). Borrower has complied in all material respects with the Federal Fair Labor Standards Act. Borrower has not violated any laws, ordinances or rules, the violation of which could reasonably be expected to cause a Material Adverse Change. Borrower's properties or assets have not been used by Borrower or, to the best of Borrower's knowledge, by previous Persons, in disposing, producing, storing, treating, or transporting any hazardous substance other than legally. Borrower has timely filed all required tax returns and paid, or made adequate provision to pay, all material taxes, except those being contested in good faith with adequate reserves under GAAP. Borrower has obtained all consents, approvals and authorizations of, made all declarations or filings with, and given all notices to, all government authorities that are necessary to continue its business as currently conducted, except where the failure to do so could not reasonably be expected to cause a Material Adverse Change.

9.4    <u>Subsidiaries.</u>

Borrower does not own any stock, partnership interest or other equity securities except for Permitted Investments.

9.5    <u>Full Disclosure.</u>

No written representation, warranty or other statement of Borrower in any certificate or written statement given to Lender (taken together with all such written certificates and written statements to Lender) contains any untrue statement of a material fact or omits to state a material fact necessary to make the statements contained in the certificates or statements not misleading.  It being recognized by Lender that the projections and forecasts provided by Borrower in good faith and based upon reasonable assumptions are not viewed as facts and that actual results during the period or periods covered by such projections and forecasts may differ from the projected and forecasted results.

9.6    <u>Miscellaneous.</u>

9.6.1 Borrower shall within five (5) business days notify Lender in writing of any issue which may materially affect the Collateral or Borrower's business.

9.6.2 Borrower shall not sell any of the Collateral or its assets outside the ordinary course of its business.

9.6.3 Any change in control or ownership of Borrower shall require Lender's written consent.

9.6.4 Upon confirmation of any Chapter 11 Plan, Borrower shall be solvent and remain solvent.

9.6.6 Borrower is in compliance with all of its obligations as a debtor in possession in the Bankruptcy Case, and no parties have sought the appointment of a chapter 11 trustee or examiner.

9.6.7 Borrower shall pay all allowed administrative expenses incurred in connection with the Bankruptcy Case, including but not limited to all costs and fees of Debtor's counsel and other professionals, fees owed to the Office of the U.S. Trustee, and trade debt incurred during the Bankruptcy Case.

9.6.8 Borrower shall provide Lender within two business days of the filing of any and all operating reports filed in connection with the Bankruptcy Case, as well as any pleadings filed or received in connection with the Bankruptcy Case which were not filed through the Pacer system.

10.    <u>AFFIRMATIVE COVENANTS</u>

Borrower will do all of the following:

10.1    <u>Government Compliance.</u>

Borrower will maintain its legal existence and good standing in its jurisdiction of formation and maintain qualification in each jurisdiction in which the failure to so qualify would reasonably be expected to cause a material adverse effect on Borrower's business or operations.  Borrower will comply with all laws, ordinances and regulations to which it is subject, noncompliance with which could have a material adverse effect on Borrower's business or operations or would reasonably be expected to cause a Material Adverse Change.

10.2    Financial Statements, Reports, Certificates.

(a)    Borrower will deliver to Lender: (i) as soon as available, but no later than 20 days after the last day of each month, a company prepared consolidated balance sheet and income statement covering Borrower's consolidated operations during the period, in a form and certified by a Responsible Officer acceptable to Lender; (ii) as soon as available, but no later than 90 days after the last day of Borrower's fiscal year, audited consolidated financial statements prepared under GAAP, consistently applied, together with an unqualified opinion on the financial statements from an independent certified public accounting firm reasonably acceptable to Lender.

(b)    Lender has the right to audit Borrower's Collateral at Borrower's expense, but the audits will be conducted no more often than every year unless an Event of Default has occurred and is continuing.

10.3    Taxes.

Borrower will make timely payment of all material federal, state, and local taxes or assessments (including documentary or stamp taxes associated with this transaction) except as such payments may be deferred, delayed or discharged under the Bankruptcy Code and will deliver to Lender, on demand, appropriate certificates attesting to the payment.

10.4    Insurance.

Borrower will keep its business and the Collateral insured for risks and in amounts, as Lender may reasonably request.  Insurance policies will be in a form, with companies, and in amounts that are satisfactory to Lender in Lender's reasonable discretion.  All property policies will have a lender's loss payable endorsement showing Lender as an additional loss payee and all liability policies will show the Lender as an additional insured and provide that the insurer must give Lender at least 20 days' notice before canceling its policy.  At Lender's request, Borrower will deliver certified copies of policies and evidence of all premium payments. Proceeds payable under any policy will, at Lender's option, be payable to Lender on account of the Obligations.

10.5    Further Assurances.

Borrower will execute any further instruments and take further action as Lender reasonably requests to perfect. or continue Lender's security interest in the Collateral or to effect the purposes of this Agreement.

11.    NEGATIVE COVENANTS

Borrower will not do any of the following without Lender's prior written consent, which will not be unreasonably withheld:

11.1    Dispositions.

Convey, sell, lease, transfer or otherwise dispose of (collectively "Transfer"), or permit any of its Subsidiaries to Transfer, all or any part of its business or property absent Lender's advance written consent, other than Transfers (i) of Inventory in the ordinary course of business; (ii) of non-exclusive licenses and similar arrangements for the use of the property of Borrower or its Subsidiaries in the ordinary course of business; or (iii) of worn-out or obsolete Equipment.

**11.2    Changes in Business, Ownership, Management or Business Locations.**

Except pursuant to a plan of reorganization confirmed under the Bankruptcy Code, engage in any business other than the businesses currently engaged in by Borrower or reasonably related thereto (including Borrower's plans for use of its technology in the palm oil and healthcare areas) or have a material change in its management or ownership (other than the sale of Borrower's equity securities in a public offering or to venture capital investors approved by Lender) of greater than 25%. Borrower will not, without at least 30 days prior written notice, relocate its chief executive office or add any new offices or business locations.

**11.3    Mergers or Acquisitions.**

Merge or consolidate, or permit any of its Subsidiaries to merge or consolidate, with any other Person, or acquire, or permit any of its Subsidiaries to acquire, all or substantially all of the capital stock or property of another Person.

**11.4    Indebtedness.**

Create, incur, assume, or be liable for any Indebtedness other than Permitted Indebtedness.

**11.5    Encumbrance.**

Create, incur, or allow any Lien on any of its property, or assign or convey any right to receive income, including the sale of any Accounts except for Permitted Liens, or permit any Collateral not to be subject to the first priority security interest granted here, subject to Permitted Liens.

**11.6    Distributions; Investments.**

Directly or indirectly acquire or own any Person, or make any Investment in any Person, other than Permitted Investments. Pay any dividends or make any distribution or payment or redeem, retire or purchase any capital stock.

**11.7    Transactions with Affiliates.**

Directly or indirectly enter into or permit any material transaction with any Affiliate except transactions that are in the ordinary course of Borrower's business, on terms less favorable to Borrower than would be obtained in an arm's length transaction with a non-affiliated Person.

**11.8    Subordinated Debt.**

Make or permit any payment on any Subordinated Debt, except under the terms of the Subordinated Debt or pursuant to a Bankruptcy Court order, or amend any provision in any document relating to the Subordinated Debt without Lender's prior written consent.

**11.9    Compliance.**

Become an "investment company" or a company controlled by an "investment company," under the Investment Company Act of 1940 or undertake as one of its important activities extending credit to purchase or carry margin stock, or use the proceeds of any Credit Extension for that purpose; fail to meet the minimum funding requirements of ERISA, permit a Reportable Event or Prohibited Transaction, as defined in ERISA, to occur; fail to comply with the Federal Fair Labor Standards Act or violate any other law or regulation, if the

violation could reasonably be expected to have a material adverse effect on Borrower's business or operations or would reasonably be expected to cause a Material Adverse Change, or permit any of its Subsidiaries to do so.

12.   **EVENTS OF DEFAULT**

Any one of the following is an Event of Default:

12.1   Payment Default.

If Borrower fails to pay any of the Obligations within 3 days after their due date. During the additional period the failure to cure the default is not an Event of Default (but consistent with the discretionary nature of this transaction, Borrower understands that Lender is under no obligation to make any Credit Extension at any time, let alone during the cure period);

12.2   Covenant Default.

If Borrower does not perform any obligation in Section 9 or violates any covenant in Section 10 or does not perform or observe any other material term, condition or covenant in this Agreement, any Loan Documents, or in any agreement between Borrower and Lender and as to any default under a term, condition or covenant that can be cured, has not cured the default within 10 days after it occurs, or if the default cannot be cured within 10 days or cannot be cured after Borrower's attempts within 10 day period, and the default may be cured within a reasonable time, then Borrower has an additional period (of not more than 30 days) to attempt to cure the default. During the additional time, the failure to cure the default is not an Event of Default ;

12.3   Attachment.

If any material portion of Borrower's assets is attached, seized, levied on, or comes into possession of a trustee or receiver and the attachment, seizure or levy is not removed in 10 days, or if Borrower is enjoined, restrained, or prevented by court order from conducting a material part of its business or if a judgment or other claim becomes a Lien on a material portion of Borrower's assets, or if a notice of lien, levy, or assessment is filed against any of Borrower's assets by any government agency and not paid within 10 days after Borrower receives notice. These are not Events of Default if stayed or if a bond is posted pending contest by Borrower (but no Credit Extensions will be made during the cure period);

12.4   Other Agreements.

If there is a default in any agreement between Borrower and a third party that gives the third party the right to accelerate any Indebtedness exceeding $100,000 or that could cause a Material Adverse Change;

12.5   Judgments.

If a money judgment(s) in the aggregate of at least $50,000 is rendered against Borrower and is unsatisfied and unstayed for 10 days (but no Credit Extensions will be made before the judgment is stayed or satisfied); or

### 12.6   Misrepresentations.

If Borrower or any Person acting for Borrower makes any material misrepresentation or material misstatement now or later in any warranty or representation in this Agreement or in any writing delivered to Lender or to induce Lender to enter this Agreement or any Loan Document.

### 12.7   Bankruptcy.

If the Bankruptcy Court grants to any person an order for relief from or modification of the automatic stay under Bankruptcy Code Section 362 that would, in Lender's judgment, adversely affect Borrower's payment or performance of the Obligations or Lender's right to or interest in the Collateral; the Bankruptcy Court grants to any party in interest (other than Lender) in the Bankruptcy Case a lien upon any Collateral pursuant to Bankruptcy Code Section 364(c) or Section 364(d), other than a purchase money security interest; Borrower fails to comply with its obligations as a debtor in possession in the Bankruptcy Case; the Bankruptcy Court enters an order for the appointment of a Chapter 11 or Chapter 7 Trustee; or the case is converted to Chapter 7.

## 13.   LENDER'S RIGHTS AND REMEDIES

### 13.1   Rights and Remedies.

When an Event of Default occurs and continues Lender may, without notice or demand, but subject to the provisions of the Bankruptcy Code and any order approving this Agreement, do any or all of the following:(a)   Declare all Obligations immediately due and payable;

(a)      Stop advancing money or extending credit for Borrower's benefit under this Agreement or under any other agreement between Borrower and Lender;

(b)      Seek to enforce its security interests, subject to obtaining an order of the Court granting relief from the automatic stay.   Such relief may be sought on an expedited basis.   Notwithstanding the foregoing, Borrower shall be allowed at least 7 days to respond to any such motion for relief from the automatic stay

(c)      Make any payments and do any acts it considers necessary or reasonable to protect its security interest in the Collateral.   Borrower will assemble the Collateral if Lender requires and make it available as Lender designates.   Lender may enter premises where the Collateral is located, take and maintain possession of any part of the Collateral, and pay, purchase, contest, or compromise any Lien which appears to be prior or superior to its security interest and pay all expenses incurred. Borrower grants Lender a license to enter and occupy any of its premises, without charge, to exercise any of Lender's rights or remedies;

(d)      Apply to the Obligations any (i) balances and deposits of Borrower it holds, or (ii) any amount held by Lender owing to or for the credit or the account of Borrower;

(e)      Ship, reclaim, recover, store, finish, maintain, repair, prepare for sale, advertise for sale, and sell the Collateral.   Lender is granted a non-exclusive, royalty-free license or other right to use, without charge, Borrower's labels, Patents, Copyrights, Mask Works, rights of use of any name, trade secrets, trade names, Trademarks, service marks, and advertising matter, or any similar property as it pertains to the Collateral, in completing production of, advertising for sale, and selling any Collateral and, in connection with

Lender's exercise of its rights under this Section, Borrower's rights under all licenses and all franchise agreements inure to Lender's benefit; and

(f)     Dispose of the Collateral according to the Code.

### 13.2    Power of Attorney.

Effective only when an Event of Default occurs and continues and when the Bankruptcy Case is dismissed or converted to a chapter 7 case, Borrower irrevocably appoints Lender as its lawful attorney to: (i) endorse Borrower's name on any checks or other forms of payment or security; (ii) sign Borrower's name on any invoice or bill of lading for any Account or drafts against account debtors, (iii) make, settle, and adjust all claims under Borrower's insurance policies; (iv) settle and adjust disputes and claims about the Accounts directly with account debtors, for amounts and on terms Lender determines reasonable; and (v) transfer the Collateral into the name of Lender or a third party as the Code permits. Lender may exercise the power of attorney to sign Borrower's name on any documents necessary to perfect or continue the perfection of any security interest regardless of whether an Event of Default has occurred. Lender's appointment as Borrower's attorney in fact, and all of Lender's rights and powers, coupled with an interest, are irrevocable until all Obligations have been fully repaid and performed and Lender's obligation to provide Credit Extensions terminates.

### 13.3    Accounts Collection.

When an Event of Default occurs and continues and when the Bankruptcy Case is dismissed or converted to a chapter 7 case, Lender may notify any Person owing Borrower money of Lender's security interest in the funds and verify the amount of the Account. Borrower must collect all payments in trust for Lender and, if requested by Lender, immediately deliver the payments to Lender in the form received from the account debtor, with proper endorsements for deposit.

### 13.4    Lender Expenses.

If Borrower fails to pay any amount or furnish any required proof of payment to third persons, Lender may make all or part of the payment or obtain insurance policies required in Section 9.4, and take any action under the policies Lender deems prudent. Any amounts paid by Lender are Lender Expenses and immediately due and payable, bearing interest at the then applicable rate and secured by the Collateral. No payments by Lender are deemed an agreement to make similar payments in the future or Lender's waiver of any Event of Default.

### 13.5    Lender's Liability for Collateral.

If Lender complies with reasonable practices and Section 9-207 of the Code, it is not liable for: (a) the safekeeping of the Collateral; (b) any loss or damage to the Collateral; (c) any diminution in the value of the Collateral; or (d) any act or default of any carrier, warehouseman, bailee, or other person. Borrower bears all risk of loss, damage or destruction of the Collateral.

### 13.6    Remedies Cumulative.

Lender's rights and remedies under this Agreement, the Loan Documents, and all other agreements are cumulative. Lender has all rights and remedies provided under the Code, by law, or in equity. Lender's exercise of one right or remedy is not an election, and Lender's waiver of any Event of Default is not a

continuing waiver. Lender's delay is not a waiver, election, or acquiescence. No waiver is effective unless signed by Lender and then is only effective for the specific instance and purpose for which it was given.

13.7    **Demand Waiver.**

Borrower waives demand, notice of default or dishonor, notice of payment and nonpayment, notice of any default, nonpayment at maturity, release, compromise, settlement, extension, or renewal of accounts, documents, instruments, chattel paper, and guarantees held by Lender on which Borrower is liable.

14.    **NOTICES**

All notices or demands by any party about this Agreement or any other related agreement must be in writing and be personally delivered or sent by an overnight delivery service, by certified mail, postage prepaid, return receipt requested, or by email to the addresses as follows:

If To Borrower:

William B. Wittmeyer
CEO & Chairman
wbwittmeyer@gmail.com
Electronic Sensor Technology, Inc.
1125-B Business Circle Center
Newbury Park, CA 91320


With Copy To:

David S. Kupetz
dkupetz@sulmeyerlaw.com
Jason D. Balitzer
jbalitzer@bsulmeyerlaw.com
SulmeyerKupetz
A Professional Corporation
333 South Hope Street, Thirty-Fifth Floor
Los Angeles, California 90071-1406


If To Lender:

_____
_____
_____
_____


With Copy To:

Daniel Weintraub
James R. Selth

Elaine V. Nguyen
WEINTRAUB & SELTH, APC
11766 Wilshire Boulevard, Suite 1170
Los Angeles, CA 90025
Telephone: (310) 207-1494
Facsimile: (310) 442-0660

A party may change its notice address by giving the other party written notice.

## 15. CHOICE OF LAW , VENUE AND JURY TRIAL WAIVER

California law governs the Loan Documents without regard to principles of conflicts of law.  Borrower and Lender each submit to the exclusive jurisdiction of the Bankruptcy Court.

**BORROWER AND LENDER EACH WAIVE THEIR RIGHT TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION ARISING OUT OF ANY OF THE LOAN DOCUMENTS OR ANY CONTEMPLATED TRANSACTION, INCLUDING CONTRACT, TORT, BREACH OF DUTY AND ALL OTHER CLAIMS. THIS WAIVER IS A MATERIAL INDUCEMENT FOR BOTH PARTIES TO ENTER INTO THIS AGREEMENT.  EACH PARTY HAS REVIEWED THIS WAIVER WITH ITS COUNSEL.**

## 16. GENERAL PROVISIONS

### 16.1 Successors and Assigns.

This Agreement binds and is for the benefit of the successors and permitted assigns of each party.  Borrower may not assign this Agreement or any rights under it without Lender's prior written consent which may be granted or withheld in Lender's discretion.  Lender has the right, without the consent of or notice to Borrower, to sell, transfer, negotiate, or grant participation in all or any part of, or any interest in, Lender's obligations, rights and benefits under this Agreement.

### 16.2 Indemnification.

Borrower will indemnify, defend and hold harmless Lender and its officers, employees, and agents against:  (a) all obligations, demands, claims, and liabilities asserted by any other party in connection with the transactions contemplated by the Loan Documents; and (b) all losses or Lender Expenses incurred, or paid by Lender from, following, or consequential to transactions between Lender and Borrower (including reasonable attorneys fees and expenses), except for losses caused by Lender's gross negligence or willful misconduct.

### 16.3 Time of Essence.

Time is of the essence for the performance of all obligations in this Agreement.

### 16.4 Severability of Provision.

Each provision of this Agreement is severable from every other provision in determining the enforceability of any provision.

16.5    Amendments in Writing, Integration.

All amendments to this Agreement must be in writing and signed by Borrower and Lender. This Agreement represents the entire agreement about this subject matter, and supersedes prior negotiations or agreements. All prior agreements, understandings, representations, warranties, and negotiations between the parties about the subject matter of this Agreement merge into this Agreement and the Loan Documents.

16.6    Counterparts.

This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, are an original, and all taken together, constitute one Agreement.

16.7    Survival.

All covenants, representations and warranties made in this Agreement continue in full force while any Obligations remain outstanding. The obligations of Borrower in Section 12.2 to indemnify Lender will survive until all statutes of limitations for actions that may be brought against Lender have run.

16.8    Confidentiality.

In handling any confidential information, Lender will exercise the same degree of care that it exercises for its own proprietary information, but disclosure of information may be made (i) to Lender's subsidiaries or affiliates in connection with their business with Borrower, (ii) to prospective transferees or purchasers of any interest in the loans, (iii) as required by law, regulation, subpoena, or other order, (iv) as required in connection with Lender's examination or audit and (v) as Lender considers appropriate exercising remedies under this Agreement. Confidential information does not include information that either: (a) is in the public domain or in Lender's possession when disclosed to Lender, or becomes part of the public domain after disclosure to Lender; or (b) is disclosed to Lender by a third party, if Lender does not know that the third party is prohibited from disclosing the information.

16.9    Attorneys' Fees, Costs and Expenses.

In any action or proceeding between Borrower and Lender arising out of the Loan Documents, the prevailing party will be entitled to recover its reasonable attorneys' fees and other reasonable costs and expenses incurred, in addition to any other relief to which it may be entitled.

16.10   No Cross-Collateralization.

This Agreement does not grant cross-collateralization with regard to any prepetition indebtedness.

17.    DEFINITIONS

17.1    Definitions.

In this Agreement:

"**Accounts**" are all existing and later arising accounts, contract rights, and other obligations owed Borrower in connection with its sale or lease of goods or provision of services, all credit insurance, guaranties, other security and all merchandise returned or reclaimed by Borrower and Borrower's Books relating to any of the foregoing.

"**Advance**" or "**Advances**" is a loan advance (or advances).

"**Affiliate**" of a Person is a Person that owns or controls directly or indirectly the Person, any Person that controls or is controlled by or is under common control with the Person, and each of that Person's senior executive officers, directors, partners and, for any Person that is a limited liability company, that Person's managers and members.

"**Bankruptcy Code**" is the United States Bankruptcy Code, as in effect from time to time.

"**Bankruptcy Court**" is defined in Recital B herein.

"**Borrower's Books**" are all Borrower's books and records including ledgers, records regarding Borrower's assets or liabilities, the Collateral, business operations or financial condition and all computer programs or discs or any equipment containing the information.

"**Business Day**" is any day that is not a Saturday, Sunday or legal holiday in the United States..

"**Closing Date**" is the date of this Agreement.

"**Code**" is the Uniform Commercial Code as adopted in the state of California.

"**Collateral**" is the property described on <u>Exhibit A</u>.

"**Copyrights**" are all copyright rights, applications or registrations and like protections in each work or authorship or derivative work, whether published or not (whether or not it is a trade secret) now or later existing, created, acquired or held.

"**Credit Extension**" is each Advance, or any other extension of credit by Lender for Borrower's benefit.

"**Equipment**" is all present and future machinery, equipment, tenant improvements, furniture, fixtures, vehicles, tools, parts and attachments in which Borrower has any interest.

"**ERISA**" is the Employment Retirement Income Security Act of 1974, and its regulations.

"**GAAP**" is generally accepted accounting principles.

"**Indebtedness**" is (a) indebtedness for borrowed money or the deferred price of property or services, such as reimbursement and other obligations for surety bonds and letters of credit, (b) obligations evidenced by notes, bonds, debentures or similar instruments, (c) capital lease obligations and (d) Contingent Obligations.

"**Insolvency Proceeding**" are proceedings by or against any Person under the United States Bankruptcy Code, or any other bankruptcy or insolvency law, including assignments for the benefit of creditors, compositions, extensions generally with its creditors, or proceedings seeking reorganization, arrangement, or other relief.

**"Intellectual Property"** is:

(a)    Copyrights, Trademarks, Patents, and Mask Works including amendments, renewals, extensions, and all licenses or other rights to use and all license fees and royalties from the use;

(b)    Any trade secrets and any intellectual property rights in computer software and computer software products now or later existing, created, acquired or held;

(c)    All design rights which may be available to Borrower now or later created, acquired or held;

(d)    Any claims for damages (past, present or future) for infringement of any of the rights above, with the right, but not the obligation, to sue and collect damages for use or infringement of the intellectual property rights above;

All proceeds and products of the foregoing, including all insurance, indemnity or warranty payments.

**"Inventory"** is present and future inventory in which Borrower has any interest, including merchandise, raw materials, parts, supplies, packing and shipping materials, work in process and finished products intended for sale or lease or to be furnished under a contract of service, of every kind and description now or later owned by or in the custody or possession, actual or constructive, of Borrower, including inventory temporarily out of its custody or possession or in transit and including returns on any accounts or other proceeds (including insurance proceeds) from the sale or disposition of any of the foregoing and any documents of title.

**"Investment"** is any beneficial ownership of (including stock, partnership interest or other securities) any Person, or any loan, advance or capital contribution to any Person.

**"Lender Expenses"** are all audit fees and expenses and reasonable costs and expenses (including reasonable attorneys' fees and expenses) for preparing, negotiating, administering, defending and enforcing the Loan Documents (including appeals or Insolvency Proceedings).

**"Lien"** is a mortgage, lien, deed of trust, charge, pledge, security interest or other encumbrance.

**"Loan Documents"** are, collectively, this Agreement, any note, or notes or guaranties executed by Borrower, and any other present or future agreement between Borrower and/or for the benefit of Lender in connection with this Agreement, all as amended, extended or restated.

**"Material Adverse Change"** means if there: (i) occurs a material adverse change in the business operations, or condition (financial or otherwise) of the Borrower; (ii) is a material impairment of the prospect of repayment of any portion of the Obligations; (iii) is a material impairment of the value or priority of Lender's security interest in the Collateral.

**"Maturity Date"** is the earlier of confirmation of a plan of reorganization by Borrower or May 31, 2015. **"Obligations"** are debts, principal, interest, Lender Expenses and other amounts Borrower owes Lender now or later and including interest accruing after Insolvency Proceedings begin and debts, liabilities, or obligations of Borrower assigned to Lender.

**"Patents"** are patents, patent applications and like protections, including improvements, divisions, continuations, renewals, reissues, extensions and continuations-in-part of the same.

**"Permitted Indebtedness"** is:

(a)    Borrower's indebtedness to Lender under this Agreement or any other Loan Document;

(b)    Indebtedness existing on the Closing Date;

(c)    Subordinated Debt;

(d)    Indebtedness to trade creditors incurred in the ordinary course of business; and

(e)    Indebtedness secured by Permitted Liens.

**"Permitted Investments"** are:

(a)    Investments existing on the Closing Date; and

(b)    (i) marketable direct obligations issued or unconditionally guaranteed by the United States or its agency or any State maturing within 1 year from its acquisition, (ii) commercial paper maturing no more than 1 year after its creation and having the highest rating from either Standard & Poor's Corporation or Moody's Investors Service, Inc., and (iii) Lender's certificates of deposit issued maturing no more than 1 year after issue.

**"Permitted Liens"** are:

(a)    Liens, if any, existing on the Closing Date and shown on the Borrower's Bankruptcy Schedules or arising under this Agreement or other Loan Documents;

(b)    Liens for taxes, fees, assessments or other government charges or levies, either not delinquent or being contested in good faith and for which Borrower maintains adequate reserves on its Books, if they have no priority over any of Lender's security interests;

(c)    Purchase money Liens (i) on Equipment acquired or held by Borrower or its Subsidiaries incurred for financing the acquisition of the Equipment, or (ii) existing on equipment when acquired, if the Lien is confined to the property and improvements and the proceeds of the equipment;

(d)    Licenses or sublicenses granted in the ordinary course of Borrower's business and any interest or title of a licensor or under any license or sublicense, if the licenses and sublicenses permit granting Lender a security interest;

(e)    Leases or subleases granted in the ordinary course of Borrower's business, including in connection with Borrower's leased premises or leased property;

(f)    Liens incurred in the extension, renewal or refinancing of the indebtedness secured by Liens described in (a) through (c), but any extension, renewal or replacement Lien must be limited to the property encumbered by the existing Lien and the principal amount of the indebtedness may not increase.

**"Person"** is any individual, sole proprietorship, partnership, limited liability company, joint venture, company association, trust, unincorporated organization, association, corporation, institution, public benefit corporation, firm, joint stock company, estate, entity or government agency.

**"Prime Rate"** is the variable rate of interest, per annum, published by The Wall Street Journal as the "Prime Rate". The Prime Rate is nothing more nor less than an index for determining the interest rate payable under the terms of this Agreement. The Prime Rate is not necessarily the best rate, or any other definition of

rates, offered by the banks that establish the rate or by Lender. In the event The Wall Street Journal ceases to publish the Prime Rate, Lender, in its reasonable judgment, may substitute any similar index for the Prime Rate.

**"Request for Advance"** means a written or telephonic request (or other form of request acceptable to the Lender) for an advance of principal submitted by Borrower to the Lender pursuant to this Agreement.

**"Responsible Officer"** is each of the Chief Executive Officer, and the Chief Financial Officer and the Controller of Borrower.

**"Subordinated Debt"** is debt incurred by Borrower subordinated to Borrower's indebtedness owed to Lender and which is reflected in a written agreement in a manner and form acceptable to Lender and approved by Lender in writing.

**"Subsidiary"** is for any Person, or any other business entity of which more than 50% of the voting stock or other equity interests is owned or controlled, directly or indirectly, by the Person or one or more Affiliates of the Person.

**"Trademarks"** are trademark and servicemark rights, registered or not, applications to register and registrations and like protections, and the entire goodwill of the business of Assignor connected with the trademarks.

**"Transfer"** as defined in Section 10.

[signatures appears on following page]

33

BORROWER:

ELECTRONIC SENSORY TECHNOLOGY, INC., DEBTOR IN POSSESSION

By: _____
     William B. Wittmeyer, CEO

LENDER:


By: _____, General Partner


By: _____
     Azmi Wan Hamzah,
     Manager/Member

EXHIBIT A

PROMISSORY NOTE

**$1,875,000.00**                              October____, 2014

      FOR VALUE RECEIVED, the undersigned, ELECTRONIC SENSORY TECHNOLOGY, INC., a Nevada Corporation ("Borrower"), Debtor and Debtor in Possession, hereby promises to pay to the order of _____ ("Lender"), for its own account under the Loan and Security Agreement of even date herewith, or its assigns, at its address at _____, or at such other place as Lender may designate from time to time in writing, in lawful money of the United States of America and in immediately available funds, the principal amount of ONE MILLION, EIGHT HUNDRED SEVENTY FIVE THOUSAND DOLLARS ($1,875,000.00), or such lesser or greater principal amount as may be from time to time outstanding ("Indebtedness") pursuant to the Loan and Security Agreement.

      Capitalized terms or matters of construction defined or established in Loan and Security Agreement of even date herewith by and among Borrower and Lender  (including all annexes, exhibits and schedules thereto, and as the same may be amended, restated, supplemented or otherwise modified from time to time, the "Loan Documents") shall be applied herein as defined or established therein.  This Promissory Note ("Note") is issued pursuant to the Loan Documents, is the "Promissory Note" referred to therein, and is entitled to the benefit and security of the Loan Documents provided for therein, to which a reference is hereby made for a statement of all of the terms and conditions under which the Indebtedness is made and is to be repaid.

      All of the terms, covenants and conditions of the Loan Agreement and all other Instruments evidencing or securing the Indebtedness hereunder, including the Loan Agreement, are hereby made a part of this Note and are deemed incorporated herein in full.  The date and amount of each advance made by Lender to Borrower, the rates of interest applicable thereto and each payment made on account of the principal thereof shall be recorded by Lender on its books and records; provided, that the failure by Lender to make any such recordation shall not affect the obligations of Borrower to make payment when due of any amount owing under the Loan Documents in respect of the advances made by Lender to Borrower.

      The principal amount of the Indebtedness from time to time evidenced hereby shall be payable in the amounts and on the dates specified in the Loan Documents and, if not sooner paid in full, on the Maturity Date.  Interest on the outstanding principal amount of this Note shall be paid until such principal amount is paid in full at such rates of interest, including the Default Rate, if applicable, and at such times as are specified in the Loan Agreement.

      Except as otherwise provided in the Loan Documents, if any payment or prepayment on this Note becomes due and payable on a day other than a Business Day, the maturity thereof shall be extended to the next succeeding Business Day and, with respect to payments of principal, interest thereon shall be payable at the then applicable rate during such extension.

      Upon the occurrence and during the continuance of an Event of Default, this Note may, without demand, notice or legal process of any kind, as provided in the Loan Agreement, be declared, and upon such declaration immediately shall become, or upon certain circumstances set forth in the Loan Agreement may become without declaration, due and payable.

Time is of the essence of this Note. To the fullest extent permitted by applicable law, Borrower waives presentment, demand, protest, and notice of nonpayment and protest.

Except as provided in the Loan Agreement, this Note may not be assigned by Payee to any Person.

THIS NOTE SHALL BE GOVERNED BY, AND INTERPRETED AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO THE PRINCIPLES THEREOF REGARDING CONFLICT OF LAWS, AND ANY APPLICABLE LAWS OF THE UNITED STATES OF AMERICA.

ELECTRONIC SENSORY TECHNOLOGY, INC.,
a Nevada Corporation,
Debtor In Possession


By: _____
William B. Wittmeyer, CEO

## EXHIBIT B

The Collateral consists of all of Borrower's right, title and interest in and to the following:

All goods and equipment now owned or hereafter acquired, including, without limitation, all machinery, fixtures, vehicles (including motor vehicles and trailers), and any interest in any of the foregoing, and all attachments, accessories, accessions, replacements, substitutions, additions, and improvements to any of the foregoing, wherever located;

All inventory, now owned or hereafter acquired, including, without limitation, all merchandise, raw materials, parts, supplies, packing and shipping materials, work in process and finished products including such inventory as is held for sale or lease, or to be furnished under a contract of service or is temporarily out of Borrower's custody or possession or in transit and including any returns or repossession upon any accounts or other proceeds, including insurance proceeds, resulting from the sale or disposition of any of the foregoing and any documents of title representing any of the above;

All contract rights and general intangibles now owned or hereafter acquired, including, without limitation, goodwill, trademarks, servicemarks, trade styles, trade names, patents, patent applications, license agreements, franchise agreements, blueprints, drawings, purchase orders, customer lists, route lists, infringements, claims, computer programs, computer discs, computer tapes, literature, reports, catalogs, design rights, income tax refunds, payments of insurance, payment intangibles, and rights to payment of any kind;

All now existing and hereafter arising accounts (including health-care insurance receivables), contract rights, royalties, license rights and all other forms of obligations owing to Borrower arising out of the sale or lease of goods, the licensing of technology or the rendering of services by Borrower, whether or not earned by performance, and any and all credit insurance, guaranties, and other security therefor, as well as all merchandise returned to or reclaimed by Borrower;

All documents (including negotiable documents), cash, deposit, securities, securities entitlements, securities accounts, investment property, financial assets, letters of credit, letter of credit rights, money, certificates of deposit, instruments (including promissory notes) and chattel paper (including tangible and electronic chattel paper) now owned or hereafter acquired and Borrower's Books relating to the foregoing;

All copyright rights, copyright applications, copyright registrations and like protections in each work of authorship and derivative work thereof, whether published or unpublished, now owned or hereafter acquired; all trade secret rights, including all rights to unpatented inventions, know-how, operating manuals, license rights and agreements and confidential information, now owned or hereafter acquired; all claims for damages by way of any past, present and future infringement of any of the foregoing; and

All Borrower's Books relating to the foregoing, and the computers and equipment containing said books and records, and any and all claims, rights and interests in any of the above and all substitutions for, additions and accessions to and proceeds thereof.

## INTELLECTUAL PROPERTY SECURITY AGREEMENT

This Intellectual Property Security Agreement is entered into as of October __, 2014 by and between _____ ("Lender") and ELECTRONIC SENSORY TECHNOLOGY, INC., a Nevada Corporation ("Borrower"), Debtor and Debtor in Possession ("Grantor").

### RECITALS

A.      Lender has agreed to make certain advances of money and to extend certain financial accommodation to Grantor (the "Loans") in the amounts and manner set forth in that certain Loan and Security Agreement by and between Lender and Grantor dated as of the date herewith (as the same may be amended, modified or supplemented from time to time, the "Loan Agreement"; capitalized terms used herein are used as defined in the Loan Agreement). Lender is willing to make the Loans to Grantor, but only upon the condition, among others, that Grantor shall grant to Lender a security interest in certain Copyrights, Trademarks, Patents, and Mask Works to secure the obligations of Grantor under the Loan Agreement.

B.      Pursuant to the terms of the Loan Agreement, Grantor has granted to Lender a security interest in all of Grantor's right, title and interest, whether presently existing or hereafter acquired, in, to and under all of the Collateral.

NOW, THEREFORE, for good and valuable consideration, receipt of which is hereby acknowledged, and intending to be legally bound, as collateral security for the prompt and complete payment when due of its obligations under the Loan Agreement, Grantor hereby represents, warrants, covenants and agrees as follows:

### AGREEMENT

To secure its obligations under the Loan Agreement, Grantor grants and pledges to Lender a security interest in all of Grantor's right, title and interest in, to and under its Intellectual Property Collateral (including without limitation, Copyrights, Patents, Trademarks and Mask Works, whether or not listed on Schedules A, B, C, and D hereto), and including without limitation all proceeds thereof (such as, by way of example but not by way of limitation, license royalties and proceeds of infringement suits), the right to sue for past, present and future infringements, all rights corresponding thereto throughout the world and all re-issues, divisions continuations, renewals, extensions and continuations-in-part thereof.

This security interest is granted in conjunction with the security interest granted to Lender under the Loan Agreement. The rights and remedies of Lender with respect to the security interest granted hereby are in addition to those set forth in the Loan Agreement and the other Loan Documents, and those which are now or hereafter available to Lender as a matter of law or equity. Each right, power and remedy of Lender provided for herein or in the Loan Agreement or any of the Loan Documents, or now or hereafter existing at law or in equity shall be cumulative and concurrent and shall be in addition to every right, power or remedy provided for herein and the exercise by Lender of any one or more of the rights, powers or remedies provided for in this Intellectual Property Security Agreement, the Loan Agreement or any of the other Loan Documents, or now or hereafter existing at law or in equity, shall not preclude the

24

38

simultaneous or later exercise by any person, including Lender, of any or all other rights, powers or remedies.

IN WITNESS WHEREOF, the parties have cause this Intellectual Property Security Agreement to be duly executed by its officers thereunto duly authorized as of the first date written above.

GRANTOR:

Address of Grantor:

A ELECTRONIC SENSORY TECHNOLOGY, INC., Debtor in Possession

_____

By:_____

_____

_____

Title:_____

Attn: _____

LENDER:

Address of Lender:

_____

By:    _____
       General Partner

By:_____

_____

       Manager/Member

## Schedule A To Intellectual Property Security Agreement

### Copyrights

| Description | Registration/ Application Number | Registration/ Application Date |
|---|---|---|

40

## Schedule B To Intellectual Property Security Agreement

### Patents

| Description | Registration/ Application Number | Registration/ Application Date |
|---|---|---|

27

41

## Schedule C To Intellectual Property Security Agreement

### Trademarks

| Description | Registration/ Application Number | Registration/ Application Date |
|---|---|---|
| | | |

42

Schedule D To Intellectual Property Security Agreement

Mask Works

| Description | | Registration/ Application Number | Registration/ Application Date |
|---|---|---|---|

43

# CORPORATE BORROWING RESOLUTION

**Borrower:**  **ELECTRONIC SENSOR**      **Lender:** _____
**TECHNOLOGY, INC.,**                                 _____
**Debtor in Possession**                              _____
**1125-B Business Circle**                            _____
**Center**
**Newbury Park, CA  91320**
**Attn: William B. Wittmeyer,**
**CEO**

**I, William B. Wittmeyer, the Chief Executive Officer of ELECTRONIC SENSOR TECHNOLOGY, INC., a Nevada Corporation ("Borrower"), Debtor and Debtor in Possession ("Borrower"), CERTIFY** that Borrower is a corporation existing under the laws of the State of Nevada, the Debtor in Possession pursuant to United States Bankruptcy Court, Central District of California case number _____ filed on October ___, 2014.

I certify that at a meeting of Borrower's Members (or by other authorized corporate action) duly held the following resolutions were adopted.

It is resolved that of the following officer of Borrower, whose name, title and signature is below:

| <ins>NAME</ins> | <ins>POSITION</ins> | <ins>ACTUAL SIGNATURE</ins> |
|---|---|---|
| <ins>William B. Wittmeyer</ins> | <ins>Chief Executive Officer</ins> | _____ |

may act for Borrower and:

**Borrow Money.**  Borrow money from _____ ("Lender").

**Execute Loan Documents.**  Execute any loan documents Lender requires.

**Conditions Precedent.**  Acknowledge that any loan documents and loan pursuant thereto will be conditioned upon entry of a non-appealable Order by the Bankruptcy Court.

**Grant Security.**  Grant Lender a security interest in any of Borrower's assets.

**Negotiate Items.**  Negotiate or discount all drafts, trade acceptances, promissory notes, or other indebtedness in which Borrower has an interest and receive cash or otherwise use the proceeds.

**Lender.** _____

**Further Acts.** Designate other individuals to request advances, pay fees and costs and execute other documents or agreements (including documents or agreement that waive Borrowers right to a jury trial and accept limiting their disputes through Judicial Reference) he thinks necessary to effectuate these Resolutions.

Further resolved that all acts authorized by these Resolutions and performed before they were adopted are ratified. These Resolutions remain in effect and Lender may rely on them until Lender receives written notice of their revocation.

I certify that the persons listed above are Borrower's officers with the titles and signatures shown following their names and that these resolutions have not been modified are currently effective.

**CERTIFIED TO AND ATTESTED BY:**


X_____
  *Secretary or Assistant Secretary

# EXHIBIT 1 TO FINANCING AGREEMENT

# ESTIMATED CASHFLOW FROM 10/20/2014 TO 01/29/2015

| | Wk#1 10/23/14 | Wk#2 10/29/14 | Wk#3 11/05/14 | Wk#4 11/13/14 | Wk#5 11/20/14 | Wk#6 11/27/14 | Wk#7 12/04/14 | Wk#8 12/11/14 | Wk#9 12/18/14 | Wk#10 12/25/14 | Wk#11 01/01/15 | Wk#12 01/08/15 | Wk#13 01/15/15 | Wk#14 01/22/15 | Wk#15 01/29/15 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Estimated Total Revenue** | | | | | | | | | | | | | | | | |
| China Wisdom | | 49,000.00 | | | | | | | | | | | | | | 49,000.00 |
| Beijing R&D | | | | | | | | 24,000.00 | | | | | | | | 24,000.00 |
| Colgate – Palmolive – 1 Unit | | | | | | | | | 35,000.00 | | | | | | | 35,000.00 |
| Chevron – 1 Unit | | | | | | | | 44,000.00 | | | | | | | | 44,000.00 |
| Sanofi Prod | | | | | | | 19,000.00 | | | | | | | | | 19,000.00 |
| IFF | | | | | | | | | | | | | | | | 19,000.00 |
| Enforcement Quality Board | | | | | | 28,000.00 | | | | | | | | | | 28,000.00 |
| QuotaB3 | | | | | | | | 30,000.00 | | | | | | | | 30,000.00 |
| **Estimated Revenue from Sales** | 0.00 | 49,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 19,213.00 | 98,000.00 | 35,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 229,000.00 |
| Debtor in Possession Financing | 63,000.00 | 49,000.00 | 0.00 | 100,000.00 | 0.00 | 0.00 | 100,000.00 | | | | | | | | | |
| **Estimated Total Revenue** | 0.00 | 49,000.00 | 0.00 | 100,000.00 | 0.00 | 0.00 | 19,000.00 | 28,000.00 | 35,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |

## Estimated Pay date

| | Wk#1 | Wk#2 | Wk#3 | Wk#4 | Wk#5 | Wk#6 | Wk#7 | Wk#8 | Wk#9 | Wk#10 | Wk#11 | Wk#12 | Wk#13 | Wk#14 | Wk#15 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Personnel cost** | | | | | | | | | | | | | | | | |
| Payroll & Taxes | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 52,500.00 |
| 401k Liability | 351.29 | 351.29 | 351.29 | 351.29 | 351.29 | 351.29 | 351.29 | 351.29 | 351.29 | 351.29 | 351.29 | 351.29 | 351.29 | 351.29 | 351.29 | 5,269.35 |
| Group Health Insurance | | | 1,002.72 | | | | 1,978.84 | 115.40 | | | | 1,697.33 | | | | 5,386.44 |
| WorkerComp – CAM | 639.25 | | | | | 639.25 | | | | | | | | 639.25 | | 1,917.75 |
| **Total Personnel cost** | 4,490.54 | 3,851.29 | 5,754.01 | 3,851.29 | 3,851.29 | 4,490.54 | 5,927.23 | 3,966.69 | 3,851.29 | 3,851.29 | 3,851.29 | 5,548.67 | 3,851.29 | 4,490.54 | 3,851.29 | 65,073.54 |
| **Outside Services** | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | 22,100.00 |
| | | | | | | | | | | | | | | | | 8,000.00 |
| | | | | | | | | | | | | | | | | 50,000.00 |
| | | | | | | | | | | | | | | | | 40,000.00 |
| | | | | | | | | | | | | | | | | 14,750.00 |
| | | | | | | | | | | | | | | | | 16,156.69 |
| | | | | | | | | | | | | | | | | 25,000.00 |
| | | | | | | | | | | | | | | | | 12,500.00 |
| **Total Outside Services** | 2,000.00 | 5,147.50 | 1,522.00 | 30,500.00 | 10,844.00 | 42,244.00 | 3,750.00 | 7,244.00 | 48,024.00 | 20,000.00 | 2,244.00 | 2,017.20 | | | 3,500.00 | 188,506.60 |
| **Facilities Expense** | | | | | | | | | | | | | | | | |
| General Insurance | | | 205.75 | 2,654.11 | | | 228.75 | | 639.25 | | 338.75 | 2,654.11 | | | | 9,441.83 |
| Rent | 5,000.00 | 5,000.00 | | | 5,000.00 | | | | | 5,000.00 | | | 5,000.00 | | | 20,000.00 |
| Utilities | 2,500.00 | 2,500.00 | | | 2,500.00 | | | | | 2,500.00 | | | 2,500.00 | | | 10,000.00 |
| R&M facility – Royal cleaning & Vanleydsm | | | 300.00 | 300.00 | | 375.00 | | 105.00 | | | 300.00 | | | | | 1,500.00 |
| Telephone expense | 353.00 | 60.00 | 60.00 | | 135.00 | 383.00 | 60.00 | | 518.00 | | 60.00 | | | 520.00 | | 2,119.00 |

47

**Estimated Cash Position Base Business**

Row labels (left column):

- Total FedEx Expense
- Operation Expense
- Business Mail & Travel
- D&O Insurance
- Equipment Rental
- Office Depot
- Petty cash
- Rice america Inc-Printing
- Excel & Post
- Staples
- Signs check & Form
- Office supplies
- Prod supplies
- Postage & Freight Expense
- Renew & Maintenance Mac60
- Shareholder Exp - Continental
- Software Bldd - Excel Micro
- Dues & Sub - 1&1 Internal
- Telephone CEO AT&T/Verizon
- Total Operation Expense
- Inventory Purchase
- Data
- Misc Vendors
- Inventory Purchase
- Estimated Total Expenses
- Beginning Cash Balance
- DP
- Estimated Total Revenue
- Estimated Total Expenses
- Ending Cash Balance
- Officer Compensation
- CEO

**New Program Initiatives**

Health Care

48

ISO 13485 Quality Assurance consultant USD 400,000 project
Based Circuit Diagnosis development USD 500,000 development
Saych diagnosis development USD 400,000 development
breath capture tube USD 20,000 development

Cash Consumption New Programs

49

# EXHIBIT 2

**Initial 3 weeks cash requirements Electronic Sensor Technology**

| Personnel cost | | | | |
|---|---|---|---|---|
| Kelly D. | 1,278.80 | 1,278.80 | 1,278.80 | 3,836.40 |
| Frank Z. | 1,664.40 | 1,664.40 | 1,664.40 | 4,993.20 |
| Shaun M. | 500.00 | 500.00 | 500.00 | 1,500.00 |
| ADP fees | 56.80 | 56.80 | 56.80 | 170.40 |
| Payroll & Taxes | 3,500.00 | 3,500.00 | 3,500.00 | 10,500.00 |
| | | | | |
| 401k Liability | 351.29 | 351.29 | 351.29 | 1,053.87 |
| Aetna | | | 995.00 | 995.00 |
| Frank Z - Medicare Reimb | | | 230.80 | 230.80 |
| Anthem Blue cross | | | | - |
| Administrator, IEEE Ins | | | | - |
| Health Smart | | | 82.37 | 82.37 |
| Hardfort - Priority Acct | | | 164.20 | 164.20 |
| Metlife Ins | | | 381.98 | 381.98 |
| Standard Life Ins | | | 48.37 | 48.37 |
| Group Health Insurance | - | - | 1,902.72 | 1,902.72 |
| | | | | - |
| WorkerComp - CAN | 639.25 | | | 639.25 |
| | | | | - |
| Total Personnel cost | $ 4,490.54 | $ 3,851.29 | $ 5,754.01 | 14,095.84 |
| | | | | |
| Outside Services | | | | |
| Commission - O/S Rep | | | | 0 |
| Travel, Legal & Misc Service - per | 2,000.00 | | | 2000 |
| Legal Patent & license fees | | | | 0 |
| SullmeyerKupetz | | | | 0 |
| Consultant - Mkt (Rites) | | 3,750.00 | | 3750 |
| Crossroad - Prod | | 897.60 | 1,122.00 | 2019.6 |
| Consultant - Engineering | | | | 0 |
| Website R&M - Warwick | | 500.00 | 500.00 | 1000 |
| Total Outside Services | 2,000.00 | 5,147.60 | 1,622.00 | 8769.6 |
| | | | | 0 |
| Facilities Expense | | | | 0 |
| Flatiron - Prod Ins | | | | 0 |
| Liberty Mutual - Property Ins | | | 326.75 | 326.75 |
| General Insurance | - | - | 326.75 | 326.75 |
| | | | | 0 |
| Rent | | 5,000.00 | | 5000 |
| Utilities | | 2,500.00 | | 2500 |
| R&M facility - Royal cleaning & Vantsystem | | | | 0 |
| | | | | 0 |

| | | | |
|---|---|---|---|
| Telephone - Vocalocity | | 383.00 | 383 |
| Verizon - Fax | | 60.00 | 60 |
| Verizon - Cable | | | 0 |
| Telephone expense | - | 383.00 | 60.00 | 443 |
| | | | | 0 |
| **Total Facilities Expense** | - | 7,883.00 | 386.75 | 8269.75 |
| | | | | 0 |
| **Operation Expense** | | | | 0 |
| Business Meal & Travel | | | | 0 |
| D&O Insurance | | 4,566.20 | | 4566.2 |
| | | | | 0 |
| Rico America | | | | 0 |
| Purchases power | | | | 0 |
| Equipment Rental | | - | | 0 |
| | | | | 0 |
| Office Depot | | 169.79 | | 169.79 |
| Petty cash | | | 34.90 | 34.9 |
| Rico american- Printing | | 306.15 | | 306.15 |
| Smart & Final | | 135.85 | | 135.85 |
| Staples | | | | 0 |
| Sage check & Form | | | | 0 |
| Office supplies | - | 611.79 | 34.90 | 646.69 |
| | | | | 0 |
| Air Gas | | 321.87 | | 321.87 |
| Home depot - | | | 25.00 | 25 |
| Prod supplies | - | 321.87 | 25.00 | 346.87 |
| | | | | 0 |
| Pineybow | | | | 0 |
| Ups | | | 1,544.93 | 1544.93 |
| Fedex | | | | 0 |
| Postage & Freight Expense | - | - | 1,544.93 | 1544.93 |
| | | | | 0 |
| Sage softwareMas90 | 360.31 | | | 360.31 |
| Axis | | | | 0 |
| Renew & Maintenance Mas90 | 360.31 | - | - | 360.31 |
| | | | | 0 |
| ShareHolder Exp - Continental | | 1,029.88 | 664.94 | 1694.82 |
| Sofware R&M - Excel Mircro | | | 37.00 | 37 |
| Dues & Sub - 1&1 Internet | | | 214.00 | 214 |
| Telelephone CEO AT&T/Verizon | | | | 0 |
| | | | | |
| **Total Operation Expense** | 360.31 | 6,529.74 | 2,520.77 | 9410.82 |
| | | | | 0 |
| | | | | 0 |
| **Inventory Purchaes** | | | | 0 |
| Dalo | | 1,750.00 | | 1750 |
| Other suppliers | | 10,000.00 | | 10000 |
| | | | | 0 |
| | | - | | 0 |

| | | | | |
|---|---|---|---|---|
| Inventory Purchase | - | 11,750.00 | - | 11750 |
| | | | | 0 |
| | | | | 0 |
| Estimated Total Expenses | 6,211.60 | 37,064.35 | 18,625.36 | 61901.31 |

**52**

# EXHIBIT 3

1  Victor A. Sahn (CA Bar No. 97299)
     vsahn@sulmeyerlaw.com
2  David S. Kupetz (CA Bar No. 125062)
     dkupetz@sulmeyerlaw.com
3  Jason D. Balitzer (CA Bar No. 244537)
     jbalitzer@sulmeyerlaw.com
4  SulmeyerKupetz
   A Professional Corporation
5  333 South Hope Street, Thirty-Fifth Floor
   Los Angeles, California 90071-1406
6  Telephone: 213.626.2311
   Facsimile: 213.629.4520
7
   Bankruptcy Counsel for Electronic Sensor
8  Technology, Inc., Debtor and Debtor in Possession

9              UNITED STATES BANKRUPTCY COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                    NORTHERN DIVISION

12 | In re                          | Case No.
   |                                |
13 |                                | Chapter 11
   | Electronic Sensor Technology, Inc.,
14 | a Nevada corporation,          | SMALL BUSINESS CASE UNDER FRBP
   |                                | 1020
15 |                                |
   |                   Debtor.      | INTERIM ORDER ON MOTION FOR
16 |                                | ORDER AUTHORIZING DEBTOR TO
   |                                | INCUR POSTPETITION
17 |                                | INDEBTEDNESS ON A SECURED BASIS
   |                                |
18 | Tax Id # 98-0372780            | DATE:   [To Be Set]
   |                                | TIME:   [To Be Set]
19 |                                | PLACE:  Courtroom 201
   |                                |         U.S. Bankruptcy Court
20 |                                |         1415 State Street
   |                                |         Santa Barbara, CA 93101
21
22
23              Pursuant to an emergency motion (the "Motion") [dkt. ___] filed on _____,
24 2014, Electronic Sensor Technology, Inc. (the "Debtor"), the above-captioned debtor and debtor in
25 possession, requested an order of this Court authorizing the Debtor to incur postpetition
26 indebtedness on a secured basis.
27              The Motion states that it was filed in order to obtain necessary funding to allow the
28 Debtor to continue its operations, avoid a sustained or permanent shutdown of its operations,

*Left margin vertical text:* SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

DKUPETZ\2432657.1

53

1   move forward with a its business plan designed to preserve, protect, and enhance the value of the

2   estate and the going concern value of the Debtor, and move forward with the presentation of a

3   chapter 11 plan. The Motion was made on the primary grounds that (i) the proposed financing is

4   necessary in order to avoid irreparable harm to the estate, (ii) the necessary financing is not

5   available to the Debtor under terms more favorable to the Debtor and the estate than through the

6   incurring of debt secured by a lien on property of the estate on the proposed terms, (iii) the

7   interests of the Debtor and the estate are advanced by the financing and would be severely harmed

8   if the financing is not approved, and (iv) the proposed financing will enable the Debtor's to move

9   forward with the implementation of its business plan and the presentation of its chapter 11 plan of

10  reorganization.

11          The Court set the Motion for expedited hearing on _____, 2014, at _____

12  _.m.   The Court considered the Motion, the accompanying Memorandum of Points and

13  Authorities, the supporting Declaration of William B. Wittmeyer, the Debtor's Chief Executive

14  Officer and Chairman, and the cash flow budget/projection submitted with the omnibus

15  declaration of William B. Wittmeyer filed in support of the Motion, the facts and circumstances of

16  this case, and the arguments and representations of counsel at the hearing on the Motion.

17          Based on the foregoing, and good cause appearing therefor, the Court finding that

18  incurring the proposed postpetition indebtedness on a secured basis is in the best interests of the

19  estate and that the requirements of Bankruptcy Code section 364(d) and Bankruptcy Rule

20  4001(c)(2) have been satisfied,

21          **IT IS ORDERED** as follows:

22          1.      The Motion is granted with respect to interim financing in the sum of

23  $61,901 to avoid immediate and irreparable harm;

24          2.      The Debtor is authorized to incur postpetition indebtedness to the extent

25  stated above secured by a lien on property of the estate pursuant to Bankruptcy Code section

26  364(d)(1);

27          3.      A final hearing on the Motion shall be held on _____, 2014,

28  at _____ .m., with any response to the motion to be filed no later than _____;

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

54

1         4.    Postpetition indebtedness incurred pursuant to this Order shall accrue

2    interest as set forth in the financing agreement attached as Exhibit 1 to the Motion;

3         5.    This Order does not grant cross-collateralization with regard to any

4    prepetition indebtedness.

5

6              # # # # #

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DKUPETZ\2432657.1                                  - 3 -

55

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Hope Street, Thirty-Fifth Floor, Los Angeles, California 90071-1406.

A true and correct copy of the foregoing document entitled (*specify*): <u>DEBTOR'S EMERGENCY "FIRST DAY" MOTION FOR ORDER AUTHORING DEBTOR TO INCUR POSTPETITION INDEBTEDNESS ON A SECURED BASIS; MEMORANDUM OF POINTS AND AUTHORITIES</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) <u>October 23, 2014</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

HON. PETER H. CARROLL, CHIEF JUDGE
United States Bankruptcy Court
Central District of California
1415 State Street, Suite 230/Courtroom 201
Santa Barbara, CA 93101-2511

☒ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 23, 2014 | Debbie A. Perez | /s/ Debbie A. Perez |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**DEBTOR**: - *VIA FEDERAL EXPRESS*
Electronic Sensor Technology, Inc.
William B. Wittmeyer, Chief Executive Officer and Chairman of the Board
1125-B Business Center Circle
Newbury Park, CA 91320

**OFFICE OF THE UNITED STATES TRUSTEE** - *VIA FEDERAL EXPRESS*
OUST-Santa Barbara
128 East Carrillo Street
Santa Barbara, CA 93101

**TWENTY LARGEST CREDITORS** – *VIA EMAIL*
White & Case LLP
Alex Alvarez
633 West Fifth Street
Suite 1900
Los Angeles, CA 90071
Telephone: 213.620.7808
E-Mail: akalvarez@la.whitecase.com

Flat Iron Capital
Customer Service
Post Office Box 712195
Denver, CO 80271
Telephone: 800.800.2767
E-Mail: customerservice@flatironcapital.net

Sherb & Co., LLP
Christine Ottavio
805 3rd Avenue
No. 902
New York, NY 10022
Telephone: 212.838.2652
E-Mail: infro@sherbcpa.com

East West Bank
Cardmember Service
Post Office Box 790408
Saint Louis, MO 63179
Telephone: 866.552.8855
Francis Chang
2655 Country Lane
Westlake Village, CA 91361
Telephone: 818.889.1995
E-Mail: changfrancis8@gmail.com

Greenberg Traurig, LLP
Janet Young
1900 University Avenue
Palo Alto, CA 94303
Telephone: 650.289.7813
E-Mail: youngja@gtlaw.com

CNA Representative
1100 Industrial Road
Suite 3
Post Office Box 1266
San Carlos, CA 94070
Telephone: 877.276.7507
E-Mail: cidirectbill@cnacentral.com

Sage Software, Inc.
Customer Care Department
14855 Collections Center Drive
Chicago, IL 60693
Telephone: 888.721.8989
E-Mail: business care.mme@sage.com

Da-Lo Engineering
Terri
3696 Lavery Court
Unit 19
Newbury Park, CA 91319
Telephone: 805.498.5016
E-Mail: soccer4t@aol.com

Continental Stock Transfer & Trust
Sally William
17 Battery Place
Eighth Floor
New York, NY 10004
Telephone: 212.509.4000
E-Mail: swilliam@continentalstock.com

Worldwide Express
Kim Hames - A/R Department
850 Hampshire Road
Suite S
Westlake Village, CA 91361
Telephone: 866.993.3877
khames@wwexusa.com

Warnick Design
Michael Dean Warnick
700 West E Street
No. 1906
Northridge, CA 91325
Telephone:  760.650.9413
E-Mail:  michael@warnickdg.com

Liberty Mutual Insurance
Billing Center Department
Post Office Box 85834
San Diego, CA 92186
Telephone:  866.290.2920
E-Mail: cipacificregioncldirectbill@libertymutual.com

Federal Express
U.S. Collections Department
Post Office Box 7221
Pasadena, CA 91109
Telephone:  888.780.4580
Telephone:  877.668.5632
E-Mail:  vmcknight@fedex.com

Airgas-West, Inc.
Customer Representative
Post Office Box 7423
Pasadena, CA 91109
Telephone:  562.766.8967
E-Mail:  cermaniqua.young@airgas.com

State Board of Equalization
Post Office Box 942879
Sacramento, CA  94279-6001
E-Mail: SpecialOperationsBranch@boe.ca.gov

**COUNSEL TO HALFMOON BAY CAPITAL, INC.** – *VIA EMAIL*
Daniel J. Weintraub, Esq.
Weintraub & Selth, APC
11766 Wilshire Blvd., Ste. 1170
Los Angeles, CA  90025
P: (310) 207-1494
F: (310) 442-0660
Email: Dan@wsrlaw.net