Victor A. Sahn (CA Bar No. 97299)
vsahn@sulmeyerlaw.com
David S. Kupetz (CA Bar No. 125062)
dkupetz@sulmeyerlaw.com
Jason D. Balitzer (CA Bar No. 244537)
jbalitzer@sulmeyerlaw.com
**SulmeyerKupetz**
A Professional Corporation
333 South Hope Street, Thirty-Fifth Floor
Los Angeles, California 90071-1406
Telephone: 213.626.2311
Facsimile: 213.629.4520

Bankruptcy Counsel for Electronic Sensor Technology, Inc., Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**NORTHERN DIVISION**

In re

Electronic Sensor Technology, Inc., a Nevada corporation,

Debtor.

Tax ID #98-0372780

Case No. 9:14-bk-12347-PC

Chapter 11

SMALL BUSINESS CASE UNDER FRBP 1020

**OMNIBUS DECLARATION OF WILLIAM B WITTMEYER IN SUPPORT OF DEBTOR'S "FIRST-DAY" MOTIONS**

DATE: [To be Set]
TIME: [To be Set]
PLACE: Courtroom 201
U.S. Bankruptcy Court
1415 State Street
Santa Barbara, CA 93101

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**DECLARATION OF WILLIAM B. WITTMEYER**

I, William B. Wittmeyer, declare:

1. I have personal knowledge of the facts stated herein. I can testify that said facts are true and correct.

2. I am the Chief Executive Officer, Chairman of the Board of Directors, and the authorized representative of Electronic Sensor Technology, Inc. ("EST" or the "Debtor").

3. EST is a Nevada corporation. EST has its office in Newbury Park, California.

4. The Debtor is a technology company. EST manufactures a high speed gas chromatography instrument. Gas chromatography (GC) is a common type of chromatography used in analytical chemistry for separating and analyzing compounds that can be vaporized without decomposition. Typical uses of GC include testing the purity of a particular substance, or separating the different components of a mixture (the relative amounts of such components can also be determined). In some situations, GC may help in identifying a compound.

5. I have over 20 years experience in high-technology business and investment management. In 2003, I was co-founder of eXS Inc., a wireless access company, developing innovative and cost effective solutions for developing economics, and have been involved in the founding of other technology companies. Prior to founding these companies, I was a partner in a venture capital firm, investing in telecommunications and semiconductor start-ups. I was an early investor in Network Equipment Technologies Inc., UTStarcom, Zoran and IXYS. I have a B.Sc. (E.E.) from the Coast Guard Academy and an M.B.A. from Columbia University Graduate School of Business Administration.

6. EST commenced a bankruptcy reorganization case by filing voluntary chapter 11 petition on October 23, 2014 (the "Petition Date").

7. EST continues to manage and operate its business as a debtor in possession. No creditors' committee has been appointed in its chapter 11 case.

8. Severe liquidity problems and the need for EST to restructure its debt and equity interests and recapitalize its business led to the commencement of this reorganization case.

9. Subject to Court approval, EST has arranged for postpetition financing that will allow it to meet ongoing operating expenses and chapter 11 administrative expenses and will facilitate EST's expeditious presentation of a chapter 11 plan in this case.

10. I currently anticipate that EST will file a plan of reorganization within the first sixty days of this case.

**COMPANY HISTORY**

11. EST was originally incorporated under the laws of the state of Nevada on July 12, 2000, under the name Bluestone Ventures Inc. From the date of incorporation until February 1, 2005, it was in the business of acquiring and exploring mineral properties in the Province of Ontario, Canada. On January 26, 2005, Bluestone Ventures Inc. changed its name in conjunction with the acquisition of two companies that owned Electronic Sensor Technology, L.P. Following the acquisition, the mining business was abandoned and the company concentrated on the sale of high speed gas chromatography instruments.

12. On February 1, 2005, EST, pursuant to the terms of an Agreement and Plan of Merger by and among Electronic Sensor Technology Inc., Amerasia Technology, L&G Sensor Technology, and L&G Acquisition, Electronic Sensor Technology Inc, acquired 100% of the outstanding equity partnership interest of Electronic Sensor Technology, L.P. In connection with the merger, Electronic Sensor Technology Inc. sold in a private placement 3,985,000 shares of common stock at $1.00 per share for gross proceeds to the company of $3,985,000. Electronic Sensor Technology Inc received net proceeds of $3,821,000 after payment of fees of $164,000.

13. Electronic Sensor Technology, L.P. was formed in 1995 to develop and manufacture the zNOSE, an advanced technology in chemical vapor detection and analysis. In 1999, Electronic Sensor Technology, L.P. completed beta testing of its products and commenced commercial sales to the analytical instrumentation, quality control and homeland security market.

14. Pursuant to the merger referenced above, EST became a public company (it was a reverse merger into a public company). On March 31, 2010, EST filed a Form 15 with the Securities and Exchange Commission (the "SEC") terminating its duty to file reports with the SEC.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**BUSINESS SUMMARY**

15. As stated above, EST manufactures a high speed gas chromatography instrument. Gas chromatography (GC) is a common type of chromatography used in analytical chemistry for separating and analyzing compounds that can be vaporized without decomposition. Typical uses of GC include testing the purity of a particular substance, or separating the different components of a mixture (the relative amounts of such components can also be determined). In some situations, GC may help in identifying a compound.

16. Electronic Sensor Technology Inc. makes four models of instruments: 7100; 4200; 4300; and 4600. All are sold under the brand name zNOSE. They differ in form factor and power source, but all use EST's proprietary surface acoustic wave (SAW) sensor.

17. The Debtor's products were focused on three market segments: (1) Scientific and Analytic analysis; (2) Homeland Security; and (3) Environmental Protection.

18. The analytical instrumentation market is approximately $800,000,000 annually in sales. The zNOSE addresses a small segment of this market: incoming raw material screening, quality assurance in pharmaceutical products and food, inspecting packaging materials and detecting intrusion of contaminants in food processing. EST estimates the market segment addressed by EST is $50,000,000.

19. EST's zNOSE high speed vapor analysis technology is able to detect trace amounts of explosives, nerve agents and chemical weapons. It is capable of identifying contraband such as narcotics, and amphetamines and other illegal drugs. The zNOSE compliments the existing technologies of x-ray and IMS bomb detection systems. The homeland security segment addressed by EST's technology is estimated to be $100,000,000.

20. The zNOSE high speed gas chromatography instrument allows for rapid analysis of toxic organic contaminants that are found in soils and water. The instrument finds use in Government agencies looking for equipment that can be used in the field for rapid testing and with contractors doing decontamination of hazardous sites. EST estimates that this market is less than $10,000,000 in sales annually.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**DEBT AND EQUITY STRUCTURE**

21. EST has been in a precarious financial condition for several years. It has severe liquidity problems. The Debtor needs to raise additional funding, but EST's balance sheet makes outside funding almost impossible. Further, after significant efforts over the course of the last several years to obtain funding (equity or debt), including from both domestic and foreign sources, EST has determined that it is able to access necessary funding only through a chapter 11 process.

22. Based on the Debtor's balance sheet as of September 30, 2014 (unaudited) and my knowledge of the current value of EST's assets, it is clear that EST is insolvent. The balance sheet reflects:

A. Total assets: $271,180.43.

B. Total Liabilities: $8,115,223.58.

23. EST does not have any outstanding prepetition secured debt. However, as indicated above, EST has approximately $8,000,000 in unsecured debt, including trade debt and unsecured loans. Additionally, approximately $8,000,000 was invested in EST to acquire equity interests (common stock). EST has approximately 33 creditors and approximately 43 equity interest holders.

**FINANCING HISTORY**

24. The following table summarizes the financing history of EST since the acquisition of Electronic Sensor Technology, L.P. by EST:

| Investor | Amount (USD) | Date | Comment |
|---|---|---|---|
| Bluestone Ventures | 4,100,000[1] | 31 January 2005 | Reverse merger into public company |
| Midsummer Investments Ltd and Islandia L.P. | 7,000,000 | 12 July 2005 | Loan |
| Halfmoon Bay Capital | 5,500,000 | 28 March | 3.5 million dollar purchase for |

[1] This $4,100,000 figure includes the conversion of $200,000 of limited partnership interests that were directly exchanged for EST common stock.

| | | | |
|---|---|---|---|
| | | 2008 | 53% of the outstanding equity of EST and 2.0M 9% convertible debentures due 2011 |
| Midsummer Investments Ltd and Islandia LP | (3,500,000) | 28 March 2008 | Negotiated repayment of $7M loan at 50% of face value. |
| Halfmoon Bay Capital | 1,000,000 | 10 April 2009 | Demand Note |
| Halfmoon Bay Capital | 200,000 | 1 March 2010 | Demand Note |
| Halfmoon Bay Capital | 100,000 | 14 April 2010 | Demand Note |
| Halfmoon Bay Capital | 100,000 | 20 May 2010 | Demand Note |
| HorseShoe(2006)LLC | 50,000 | 15 September 2010 | Demand Note |
| Halfmoon Bay Capital | 100,000 | 19 November 1010 | Demand Note |
| HorseShoe(2006)LLC | 20,000 | 11 February 2011 | Demand Note |
| HorseShoe(2006)LLC | 20,000 | 1 March 2011 | Demand Note |
| Halfmoon Bay Capital | 200,000 | 16 March 2011 | Demand Note |
| Halfmoon Bay Capital | 100,000 | 8 April 2011 | Demand Note |
| Halfmoon Bay Capital | 650,000 | 20 October 2011 | Demand Note |
| Halfmoon Bay Capital | 200,000 | 16 March 2011 | Demand Note |
| TCLim LLC | 7,000 | 25 October 2012 | No interest loan |
| Cliff SM Lim | 10.000 | 12 December 2012 | No interest loan |
| Cliff SM Lim | 10,000 | 13 December 2012 | No interest loan |
| Cliff SM Lim | 20,000 | 15 January 2013 | No interest loan |
| Cliff SM Lim | 10,000 | 6 February 2013 | No interest loan |
| Cliff SM Lim | 10,000 | 18 February 2013 | No interest loan |
| Cliff SM Lim | 10,000 | 18 July 2013 | No interest loan |
| HorseShoe(2006)LLC | 20,000 | 28 February 2013 | No interest loan |
| HorseShoe(2006) LLC | (20,000) | 15 March 2013 | Repayment of 20,000 loan |
| Superior Pacific (Steve Wang) | 10,000 | 28 March 2013 | No interest loan |
| Cliff SM Lim | 10,000 | 5 April 2013 | No interest loan |
| HorseShoe(2006)LLC | 20,000 | 8 April 2013 | No interest loan |
| HorseShoe(2006)LLC | (20,000) | 17 April 2013 | Repayment of 20,000 loan |
| Cliff SM Lim | (10,000) | 17 April 2013 | Repayment of 10,000 loan |
| Superior Pacific (Steve Wang) | (10,000) | 17 April 2013 | Repayment of 10,000 loan |
| Maggie Tham | 12,000 | 1 May 2014 | No interest loan |
| Maggie Tham | 12,000 | 16 May 2014 | No interest loan |
| Cliff SM Lim | 10,000 | 18 July 2013 | No interest loan |
| Cliff SM Lim | (20,000) | 19 July 2013 | Partial repayment of no interest loans |

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

| | | | |
|---|---|---|---|
| Cliff SM Lim | 10,000 | 23 September 2013 | No interest loan |
| Halfmoon Bay Capital | 240,000 | 23 October 2013 | Demand Note |
| Cliff SM Lim | 10,000 | 29 August 2014 | No interest loan |
| William B. Wittmeyer | 3,500 | 5 September 2014 | No interest loan |
| Halfmoon Bay Capital | 100,000 | 29 September 2014 | Demand Note |
| Maggie Tham | 15,000 | 29 September 2014 | No interest loan |

**RECENT FINANCIAL RESULTS**

25. EST's financial results for the past three years are summarized as follows:

| | CY2012 (USD) | CY 2013 | CY 2014 through August |
|---|---|---|---|
| Revenues | 683,243.25 | 731,947.16 | 402,686.00 |
| Cost of Goods Sold | 449,325.42 | 441,483.00 | 231,215.99 |
| Gross Margin | 233,927.83 | 320,464.16 | 171,470.01 |
| Operating Expenses | | | |
| R &D | 105,630.99 | 57,413.93 | 36,659.01 |
| Sales and Marketing | 256,815.42 | 190,003.06 | 151,434.00 |
| G & A | 468,235.10 | 562,035.50 | 296,742.49 |
| Total | 830,581.51 | 802,452.49 | 484,841.00 |
| Operating Income | -596,763.68 | -488,988.33 | -313,370.99 |
| Interest expense/other income | 428,666.72 | 417,968.04 | 327,721.84 |
| Net Loss | 1,025,430.40 | 906,956.37 | 641,092.83 |

26. Sales of Electronic Sensor's zNOSE gas chromatography instruments have been flat over the last three years. Sales are down approximately 70% from the peak in 2008 of $2.2 million. This decline in sales is due to (1) lower unit volume due to saturating the requirements of customers, and (2) price reductions to remain competitive in the market.

27. EST has been able to improve product margins by improving manufacturing efficiency and redesigning components to reduce cost. Sales and marketing expenses are down reflecting a shift to more commission oriented sales.

28. EST has never made money. The Debtor has raised approximately $16 million in a combination of debt and equity to fund its operations while it sought to build its business.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

## FACTORS PRECIPITATING CHAPTER 11 FILING

29. Severe liquidity problems and the need for the Debtor to restructure its debt and equity interests and recapitalize its business led to the commencement of this reorganization case.

30. EST's business model has been fundamentally flawed. A successful manufacturer of durable capital equipment should build into the equipment an ongoing revenue stream. That revenue stream can be from software licenses, proprietary consumables, annual maintenance fees, etc. EST's equipment was designed to be durable and without a consumable component. At the outset, EST elected to embed the software as part of the equipment and not charge a license fee. The initial instruments sold in 2000 are still in use with some customers.

31. Compounding this conceptual problem, were two additional problems that were not understood at the time: (1) the EST's value proposition, high speed analysis of vapors, has limited appeal in the markets that it addresses; and (2) recruiting and maintaining a sales channel requires both an understanding of the motivations of the channel and an investment in the channel.

32. Scientific and analytic laboratories have extensive tested protocols and automated equipment. EST's product, while faster than competing gas chromatography instruments, is not amenable to use with the installed automated sample handling systems in the labs. The speed appeal is further reduced by the need to develop, document and validate the testing protocols using the zNOSE.

33. The homeland security market, including testing of containers for contraband, explosives and chemical weapons, while mandated by law, has generally not been implemented. Congress annually delays the implementation of the screening requirements.

34. EST's product can best be thought of as a technology in search of an application.

## CHAPTER 11 CASE AND PLAN FOR MOVING FORWARD

35. EST's go-forward plan involves a fundamental repositioning of the company.

36. EST's technology enables high speed analysis of vapors with great sensitivity. That is, the technology enables the detection of compounds in concentrations as low as parts per trillion in as little as one minute. EST's new business model capitalizes on this technical advantage.

37. While EST is not going to stop selling product to existing customers through existing channels, the company is going to direct its effort toward two market opportunities where EST's instrument brings significant competitive advantage: (1) health care and (2) palm oil.

38. Health Care. Breath analysis is an emerging diagnostic and screening technology. Studies have shown that an analysis of the trace gasses in a patient's alveolar air can provide diagnostic information for soft tissue carcinomas such as lung cancer and breast cancer. EST's sensor technology was employed by Menssana Research, Fort Lee, New Jersey, in a recent study that established that breath analysis can detect breast cancer with the same sensitivity as a mammogram. Similar results are being obtained by Dr. Hui in China for lung cancer.

39. EST's high speed (less than one minute per test) and sensitivity (parts per trillion) is suited to doing breath analysis. Information will be available to the physician during the initial screening visit.

40. In addition to the strong technical features, breath analysis enables EST to add to the product offering a proprietary consumable, a disposable device to capture the alveolar air. Thereby enabling EST to receive a continuing revenue stream.

41. EST is negotiating a memorandum of understanding with a California company to use the zNose to diagnosis sepsis. Under this agreement, the company will private label EST's product as a tool to diagnose sepsis through breath analysis.

42. Sepsis is caused by the body's immune system reaction to a widespread bacterial infection of the blood stream. The infection can be caused by a variety of bacteria. E-coli and staphylococcus are significant causes. The body's immune system reaction causes a rapid increase in heart rate, elevated temperature and lowering of blood pressure. The current diagnostic protocol takes 72 hours to diagnose sepsis. During this 72 hour period many patients

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

die from multiple organ failure.(20% in the United States up to 50% worldwide). EST's high speed gas chromatography instrument may enable rapid diagnosis of sepsis (with-in hours of admission to the hospital), thereby saving lives and improving outcomes). It is estimated there are 1.5 million cases of sepsis in the United States and 27 million cases worldwide annually.

43.    Upon the successful completion of negotiations with the California company mentioned above, EST believes it will have a partner that will enable EST to establish its presence in the medical market, address a diagnostic market that exceeds $100,000,000 and have channels that will enable EST to sell its product in Europe, Canada, Singapore, Australia and India.

44.    Palm Oil. EST has been working with the Malaysia Palm Oil Board to determine if the zNOSE can be used to detect the fungal infection ganoderma in oil palms at an early stage. Initial studies indicate that the zNOSE can detect the gasses given off by the fungus as it grows inside the palm tree.

45.    EST is now in discussion with two plantation companies to develop a testing service. In Malaysia there are 400 million oil palms generating over $2.0 billion in revenue. Ganoderma infection is significant threat to this major agricultural crop in Malaysia and other palm oil exporting countries. The fungal infection shortens the productive life of a palm from 30 years to as little as 10 years and reduces yields by as much as 50%. Such and infection can have a serious impact on the plantations revenue and profitability. EST believes that oil palm plantations will spend 2% of their revenue ($40 million) for a service that will identify the infected oil palms.

46.    EST is repositioning itself as a service company and not merely an equipment vendor.

47.    Through the chapter 11 plan it intends to present, EST believes that its debt and equity interests will be restructured in a manner that will allow the Debtor to move forward on a viable basis and implement its new business plan.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

## FACTS IN SUPPORT OF FIRST DAY MOTIONS

**Motion for Order Authorizing Payment and/or Honoring of Prepetition Employee Compensation Benefits, Reimbursements, Withholding Taxes, Accrued Vacation, and Related Employee Claims (the "Employee Claims Motions")**

48. The Debtor has a very small staff of employees. As a result, each employee is important to the Debtor's ongoing operations.

49. As of the Petition Date, EST has two salaried non-insider employees and one non-insider commission based sales person who is also paid as a consultant for training services provided to customers (collectively, "Employees").

50. EST's employees are paid on a weekly basis. EST uses an outside payroll service, ADP, to handle payroll.

51. EST also provides its employees with health, dental, vision, disability, life, and workers' compensation insurance, a 401k plan, and paid time off. A true and correct summary of employee benefits and information regarding the weekly and annual compensation of the Debtor's salaried employees is set forth in Exhibit 1 to the Debtor's "first day" motion regarding prepetition employee priority claims (the "Employee Motion").

52. Each of the Employees for whom the Debtor requests the relief in the Employee Motion is currently employed with the company. EST does not seek such relief for any employees who are no longer employed by the company, or to any employees who provide notice to the company that they will be leaving.

53. The Debtor believes that paying and/or honoring Employee claims and benefits will allow EST to retain necessary employees, maximize the value of the company's business and assets, and leave EST in a position where it can move forward with its business operations on a viable basis. Subject to Court approval of postpetition financing, EST has access to adequate funds to continue its ongoing operations.

54. The amounts of EST's employees' salaries (for salaried employees) for each pay period and annually are included in Exhibit 1 to the Employee Motion. With respect to the Debtor's commission based sales person, the Debtor does not anticipate that any commissions will

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

be due as of the Petition Date. The Debtor does estimate that this employee is owed approximately $2,300 in fees for training customers.

55. EST is not seeking to pay out the vacation pay to the employees, but only honor accrued vacation days in the ordinary course of its business. The Debtor submits that it is appropriate to honor such claims, provided, however, that the vacation pay is not actually paid out.

56. In significant part, EST's ongoing operations and the opportunity for the company reorganize and to maximize the value of the estate is dependent upon a small number of employees. In order to maintain necessary stability, morale, and loyalty and to sustain the work effort and ethic being demonstrated by these key employees, it is imperative that payment to all employees and honoring of all employee benefits remains current.

57. It could be difficult for EST to timely find qualified replacement employees if payment of salaries or if benefits are disrupted. Even if replacements could be quietly hired, it could take significant time before they could be fully trained and qualified for the necessary work, resulting in further disruption and harm to the company's business operations and the pending reorganization process. Any interruption in EST's business or downturn in productivity could detrimentally impact the value of the estate and harm the interests of creditors of the company.

58. If prepetition compensation, reimbursement amounts and customary benefits are not received and honored in the ordinary course, employee morale would be damaged. At this time, any serious deterioration in employee morale could substantially and adversely impact the company's ability to move forward in a manner that maximizes the value of the estate. The Debtor believes that the total amount to be paid to or for the benefit of the company's employees if the requested relief is granted is significantly outweighed by the importance and necessity of the employees and the magnitude of loss of business value the company would suffer if those amounts are not paid.

59. EST's employees receive compensation for services rendered in amounts that are competitive within the company's industry.

60. EST offers its employees various benefits consistent with industry standards, including medical and dental coverage, vision care, 401k plan, and paid time off. See

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

Exhibit 1 to the Employee Motion. As with the payment of wages, it is important that benefits continue to be provided on an uninterrupted basis. By the Employee Motion, EST requests that it be authorized to continue the employee benefit plans identified in Exhibit 1 thereto and referenced below.

61.     The Debtor has established and maintained benefit plans for its employees. The general benefit plans (as described in Exhibit 1 to the Employee Motion) to EST's employees include:

Health Insurance;

Dental Insurance;

Vision Insurance;

Long term disability Insurance;

Life insurance;

Worker's compensation insurance;

401k plan; and

Paid Time Off.

62.     EST customarily reimburses employees who incur business expenses in the ordinary course of the company's business. The company's employees submit reimbursement requests following the date on which the expenses are incurred.

63.     The Debtor and I believe that the best means for maximizing the value of the Debtor's estate is through a restructuring of the Debtor's debt and equity interests and recapitalization of the Debtor. The Debtor and I believe that this will maximize the value of the estate in a manner significantly greater than simply a straight liquidation of all of the Debtor's assets. This approach would also maximize the opportunity to preserve jobs for the Debtor's employees. The Debtor anticipates filing a chapter 11 plan within 60 days of the commencement of this case.

64.     The Debtor's salaried employees are compensated weekly on the Thursday following the end of the pay period (at the end of each month). The Employee Motion seeks

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

authority to pay prepetition salaries earned during the pay periods for the weeks beginning October 13 and 20, 2014.

65. As indicated above, the Debtor offers its employees various benefits consistent with industry standards, including medical and dental coverage, and paid vacations. As with the payment of wages, it is important that benefits continue to be provided on an uninterrupted basis. By the Employee Motion, the Debtor requests that it be authorized to continue the employee benefit plans identified above and in Exhibit 1 to the Employee Motion.

66. EST customarily reimburses employees who incur business expenses in the ordinary course of the Debtor's business. The Debtor's employees submit reimbursement requests following the date on which the expenses are incurred. It is estimated that some of the Debtor's employees may have submitted receipts and/or other documentation for a minimal amount of reimbursement of business expenses unpaid as of the Petition Date. In the Employee Motion, the Debtor requests that the Court authorize the Debtor to pay any outstanding expense reimbursements to non-insider employees as of the Petition Date. The Debtor estimates that this amount will be minimal (probably less than $100.00).

**Motion for Order (1) Deeming Utility Companies Adequately Assured of Future Performance, (2) Establishing Procedures for Requests for Additional Assurance, and (3) Restraining Utility Companies From Discontinuing Alternating or Refusing Service (the "Utilities Motion").**

67. In connection with the operation of its business, EST obtains internet, website hosting, telephone, fax, and other similar services from a number of different utility suppliers (the "Utility Providers"). The Utility Providers are indentified to the best of EST's ability in Exhibit 1 to the Debtor's "first day" motion regarding utilities (the "Utilities Motion"). Exhibit 1 to the Utility Motion details EST's Utility Providers, the name, address and other available contact information for the providers, the type of service provided, the amounts of the Debtor's average one month charges for each utility.

68. The Utility Providers supply the Debtor with services essential to the continuation of the Debtor's business. Any interruption in the utility services provided to the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

Debtor would seriously disrupt the Debtor's operations and could jeopardize the reorganization of the Debtor.

69. The Debtor estimates that its projected average current monthly aggregate utility payments to the Utility Providers are approximately $670. The Debtor believes that it has not been in default of any of its obligations to Utility Providers.

70. The Debtor fully intends to pay all postpetition obligations owed to the Utility Providers in a timely manner. Further, the Debtor proposes to provide adequate assurance to the Utility Providers in accordance with the procedures outlined in the Utilities Motion.

**Motion of for Order Limiting Extent of Notice Required for Administrative Matters and Authorizing Service by Email (the "Limiting Notice Motions")**

71. EST has approximately 33 creditors, and approximately 43 known equity holders. EST has a number of other potentially interested parties, including taxing agencies and the SEC (as indicated above, EST has not been an SEC reporting entity since prior to March 31, 2010).

72. The Debtor may be required to bring a number of administrative matters before the Court in this case. Limiting the extent of notice required for such matters could materially reduce the burden and expense that would be imposed upon the estate if the EST is required to provide notice of all administrative matters in this case to all of its creditors and equity holders. At the same time, a creditor, shareholder, or other party in interest desiring to receive notice of administrative matters can ensure that notice will be received by filing and serving a request for special notice or courtesy ECF notice.

73. In order to save the Debtor's estate expense in postage and copying costs, and to make receipt of documents more convenient and expedient for various interested parties, EST also requests that the Court authorize the company to serve notices, pleadings, and other documents filed in this case by email on those parties who consent in advance to receiving service of such documents by email.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**Motion for Approval of Debtor in Possession Financing**

74.     The Debtor is accurately characterized as an early-stage technology company.  In the ordinary course of business, the Debtor has been and is currently dependent upon financing to fund its operations.  Debtor has severe liquidity problems and in need of immediate funding in order to preserve and protect the value of its estate to allow the Debtor to move forward with a plan of reorganization.  Without immediate funding, the Debtor will be forced to shut down its business.

75.     The Debtor is in the process of repositioning its business and is developing an operating plan for moving forward.  I believe that this change in EST's business model combined with the necessary restructuring of EST's debt and equity interests under a chapter 11 plan will allow EST to move forward on a viable basis, with the opportunity to achieve significant success in the future.  In order to execute this plan, and avoid a significant/devastating loss of value of the property of the estate that would result from or sustain a permanent shut down of the Debtor's operations, the Debtor is requesting the Court to approve financing on a secured based in the sum of $1,850,000 and that the Court conduct an interim hearing with regard to such financing at the earliest available date during the week of October 27, 2014 (along with the other "first day" motions), with a final hearing to be conducted approximately two weeks thereafter.

76.     In order to avoid irreparable harm, the Debtor requires authorization during the weeks of October 27 through November 14, 2014 (the initial weeks of this case), to incur debt secured by a lien on all property estate in the amount of $61,901.  This is necessary primarily for payment of employee compensation and benefits (only to be paid for non-insider employees who will continue to be employed by the Debtor), including payroll, healthcare, payroll taxes, and any ordinary course employee related obligations, payment of utilities, insurance charges, rent, and payment for materials required by the Debtor to meet any short term orders.  A schedule of these necessary expenditures for the period from October 27 through November 14, 2014, is attached to the Debtor's motion for approval of postpetition financing (the "Financing Motion") as Exhibit 2.

77.     The terms of the proposed postpetition financing are set forth in the Financing Motion and, more specifically, in the financing agreement attached as Exhibit 1 to the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

Financing Motion. The Debtor's cash flow budget/projections for the period of October 27, 2014 through January 31, 2015 is attached hereto as Exhibit 1.

78. The Debtor does not currently have any outstanding secured debt.

79. The Debtor has made exhaustive efforts to obtain the financing necessary for the Debtor's ongoing operations and in order to preserve, protect, and enhance the value of the Debtor's business.

80. For the past three years EST has sought to secure investment, in the form of equity or debt, from both domestic and foreign sources. Venture capital investors rejected the investment opportunity because EST was a publicly listed company, trading on the pink sheets. Hedge fund and special situation investors were unwilling to invest because the trading volume and valuation were such that their investment would not be liquid. We spoke to people who provide private investment in public equity (PIPE) and, again, no interest because of the market value of EST and the low trading volume.

81. EST's bank, East West Bank, has declined to provide any financing since the company's balance sheet is negative and EST's operations are unprofitable. For the same reasons, other institutional lenders are unwilling to lend to EST.

82. The only source of necessary funds for EST is Halfmoon Bay Capital, Ltd. ("Halfmoon"). Further, Halfmoon is only willing to provide funding through debtor in possession financing. Halfmoon is the largest existing unsecured creditor of EST holding a claim in the approximate amount of $6,790,442 and holds in excess of 50% of the equity security interests of EST. The principal of Halfmoon is Tan Sri Azmi.

83. The availability of postpetition funding from Halfmoon on a secured basis is in the best interests of the Debtor's estate. Such funding will preserve, protect, and enhance the value of the estate and will maximize value and allow the Debtor to move forward promptly with the administration of this case and the presentation of a chapter 11 plan.

84. The Debtor anticipates moving forward promptly with a plan of reorganization providing for a restructuring of the Debtor's debt and equity interests. Postpetition financing is necessary (i) to fund the Debtor's ongoing business operations in the ordinary course,

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

(ii) to pay expenses of administration connected with the Debtor's chapter 11 case, and (iii) for the Debtor to proceed promptly and facilitate presentation of the Debtor's plan of reorganization.

85. The Debtor has been unable to obtain credit from any source under terms more favorable to the Debtor than the terms of the proposed postpetition financing on a secured basis. The Debtor and I do not believe that the proposed, necessary postpetition financing is available other than on a secured basis. I have been actively engaged in seeking financing for EST and have determined that the only financing available to the company is from Halfmoon. Financing is not available to EST under any terms more favorable than those set forth above.

86. Absent the contemplated financing, the Debtor will be forced to cease operations, lose all value as a going concern, face a significantly diminished likelihood of an opportunity for reorganization. In contrast, the Debtor and I believe that the continued operation and reorganization of the Debtor will increase the value of the Debtor and its assets and avoid a devastating loss in value that would otherwise result.

87. Accordingly, the Debtor and I believe the proposed financing is in the best interests of the estate since (i) the proposed financing is necessary and appropriate in order to allow the Debtor to proceed with the administration of this case and with the prompt presentation of a chapter 11 plan, (ii) providing the proposed financing on a secured basis and in accordance with the proposed terms is reasonable under the circumstances, and (iii) the proposed financing is in the best interests of existing creditors and will enhance the Debtor's ability to reorganize and avoid the devastating loss of value that could occur if the Debtor was forced to cease operations.

**Motion to Establish Procedure Re Plan and Disclosure Statement Process in Small Business Case**

88. Although approximately $16 million has been invested into the Debtor in the form of debt and equity, the Debtor has less than $2,490,925 of debt when excluding debt owed to affiliates and insiders.

89. The Debtor's largest creditor, Halfmoon, holds an unsecured claim for approximately $6,790,442 (out of a total of approximately $8,000,000 of unsecured debt) and also holds in excess of 50% of the common stock of EST.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**Motion for Bar Date for Filing Claims**

90. The Debtor currently anticipates filing a plan of reorganization during the first 30-60 days of this chapter 11 case. Accordingly, the Debtor believes that the prompt setting of a bar date for filing claims is necessary and appropriate.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 23rd day of October, 2014, at Newbury Park, California.

WILLIAM B. WITTMEYER

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

# EXHIBIT 1

# ESTIMATED CASHFLOW FROM 10/20/2014 TO 01/29/2015

| | Wk#1 | Wk#2 | Wk#3 | Wk#4 | Wk#5 | Wk#6 | Wk#7 | Wk#8 | Wk#9 | Wk#10 | Wk#11 | Wk#12 | Wk#13 | Wk#14 | Wk#15 | - |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 10/23/14 | 10/30/14 | 11/06/14 | 11/13/14 | 11/20/14 | 11/27/14 | 12/04/14 | 12/11/14 | 12/18/14 | 12/25/14 | 01/01/15 | 01/08/15 | 01/15/15 | 01/22/15 | 01/29/15 | Total |
| **Estimated Total Revenue** | | | | | | | | | | | | | | | | |
| China Wisdom | | 49,000.00 | | | | | | | | | | | | | | 49,000.00 |
| Beijing R&D | | | | | | | | | 24,000.00 | | | | | | | 24,000.00 |
| Colgate - Palmolive - 1 Unit | | | | | | | | | | 35,000.00 | | | | | | 35,000.00 |
| Chevron - 1 Unit | | | | | | | | | 44,000.00 | | | | | | | 44,000.00 |
| Security Prod | | | | | | | 19,000.00 | | | | | | | | | 19,000.00 |
| IFF | | | | | | | | 28,000.00 | | | | | | | | 28,000.00 |
| Enviroment Quality Board | | | | | | | | | 30,000.00 | | | | | | | 30,000.00 |
| Quote#3 | | | | | | | | | | | | | | | | - |
| Estimated Revenue from Sales | 0.00 | 49,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 19,000.00 | 28,000.00 | 98,000.00 | 35,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 229,000.00 |
| Debtor In Possesion Financing | 63,000.00 | | | 100,000.00 | | | | 100,000.00 | | | | | | | | |
| Estimated Total Revenue | 0.00 | 49,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 19,000.00 | 28,000.00 | 98,000.00 | 35,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| **Estimated Pay date** | | | | | | | | | | | | | | | | |
| Personnel cost | | | | | | | | | | | | | | | | |
| Payroll & Taxes | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 52,500.00 |
| 401k Liability | 351.29 | 351.29 | 351.29 | 351.29 | 351.29 | 351.29 | 351.29 | 351.29 | 351.29 | 351.29 | 351.29 | 351.29 | 351.29 | 351.29 | 351.29 | 5,269.35 |
| Group Health Insurance | - | - | 1,902.72 | - | - | - | 1,670.94 | 115.40 | - | - | - | 1,697.38 | - | - | - | 5,386.44 |
| WorkerComp - CAN | 639.25 | | | | | 639.25 | | | | | | | | 639.25 | | 1,917.75 |
| Total Personnel cost | $ 4,490.54 | $ 3,851.29 | $ 5,754.01 | $ 3,851.29 | $ 3,851.29 | $ 4,490.54 | $ 5,522.23 | $ 3,966.69 | $ 3,851.29 | $ 3,851.29 | $ 3,851.29 | $ 5,548.67 | $ 3,851.29 | $ 4,490.54 | $ 3,851.29 | 65,073.64 |
| Outside Services | | | | | | | | | | | | | | | | |
| Commission - O/S Rep | | | | | 3,600.00 | 10,500.00 | | | | 18,000.00 | | | | | | 32,100.00 |
| Travel, Legal & Misc Service - Japan police | 2,000.00 | | | 6,000.00 | | | | | | | | | | | | 8,000.00 |
| Malaysia Ganoderma testing program | | | | 20,000.00 | 5,000.00 | | | | | 20,000.00 | | | | | | 50,000.00 |
| SumnyerKopetz | | | | | | 20,000.00 | | | | | 20,000.00 | | | | | 40,000.00 |
| Consultant - Mkt (Riley) | | 3,750.00 | | | | | 3,750.00 | | | 3,750.00 | | | | | 3,500.00 | 14,750.00 |
| Crossroad - Prod | | 897.60 | 1,122.00 | | 2,244.00 | 2,244.00 | | 2,244.00 | | 2,244.00 | | 2,244.00 | | | | 15,156.80 |
| Consultant - Engineering | | | | 10,000.00 | | 10,000.00 | | 5,000.00 | | | | | | | | 25,000.00 |
| Website R&M - Warwick | | 500.00 | 500.00 | 500.00 | | | | | 500.00 | | | 500.00 | | | | 2,500.00 |
| Total Outside Services | 2,000.00 | 5,147.60 | 1,622.00 | 38,500.00 | 10,844.00 | 42,744.00 | 3,750.00 | 7,244.00 | 500.00 | 48,994.00 | 20,000.00 | 2,744.00 | - | 2,917.20 | 3,500.00 | 188,506.80 |
| Facilities Expense | | | | | | | | | | | | | | | | - |
| General Insurance | - | - | 326.75 | 2,604.11 | - | - | 326.75 | - | 2,604.11 | 639.25 | - | 336.75 | 2,604.11 | - | - | 9,441.83 |
| Rent | | 5,000.00 | | | | 5,000.00 | | | | | 5,000.00 | | | | 5,000.00 | 20,000.00 |
| Utilities | | 2,500.00 | | | | 2,500.00 | | | | | 2,500.00 | | | | 2,500.00 | 10,000.00 |
| R&M facility - Royal cleaning& Vantaystem | | | | 300.00 | | | | 375.00 | | 105.00 | | 300.00 | | | | 1,080.00 |
| | | | | | | | | | | | | | | | | - |
| Telephone expense | - | 383.00 | 60.00 | - | 135.00 | 383.00 | 60.00 | - | - | 518.00 | - | 60.00 | - | 520.00 | - | 2,119.00 |

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Facilities Expense | - | 7,833.90 | 336.75 | 2,904.11 | 135.00 | 7,883.00 | 338.75 | 375.00 | 2,604.11 | 1,262.25 | 7,509.00 | 696.75 | 2,604.11 | 520.00 | 7,503.80 | 42,640.83 |
| **Operation Expense** | | | | | | | | | | | | | | | | |
| Business Meal & Travel | | 500.00 | | 2,000.00 | | | 2,000.00 | | | 2,000.00 | | | | 2000 | | 8,500.00 |
| D&O Insurance | | 4,568.20 | | | | 4,568.20 | | | | 4,568.20 | | | | 4,568.20 | | 18,264.80 |
| | | | | | | | | | | | | | | | | - |
| Equipment Rental | - | - | - | - | - | - | - | 276.28 | - | 223.00 | - | - | 278.28 | - | - | 775.56 |
| | | | | | | | | | | | | | | | | - |
| Office Depot | | 169.79 | | 200.00 | | | | | | 300.00 | | | | | | 669.79 |
| Petty cash | | | 34.90 | | | | | | | | | | | | | 34.90 |
| Rico american- Printing | | 306.15 | | 276.28 | | | | | | | | | | | | 582.43 |
| Smart & Final | | 135.85 | | | | | 100.00 | | | | | | | | | 235.85 |
| Staples | | | | | | | | | | | | | | | | - |
| Sage check & Form | | | | | 35.00 | | | | | | | | | | | 35.00 |
| Office supplies | - | 611.79 | 34.90 | 476.28 | 35.00 | - | 100.00 | - | - | 300.00 | - | - | - | - | - | 1,557.97 |
| Prod supplies | - | 321.87 | 25.00 | - | - | 100.00 | 25.00 | - | - | 125.00 | - | - | - | 100.00 | - | 696.87 |
| Postage & Freight Expense | - | - | 1,544.93 | 1,000.00 | 300.00 | - | - | 300.00 | 1,000.00 | - | - | 300.00 | 1,000.00 | - | - | 5,444.93 |
| Renew & Maintenance Mas90 | 360.31 | - | - | - | - | 360.31 | - | - | - | 360.31 | - | - | - | 360.31 | - | 1,441.24 |
| ShareHolder Exp - Continental | | 1,029.88 | 664.94 | | | 515.00 | | | | 515.00 | | | 600.00 | | | 3,324.82 |
| Software R&M - Excel Micro | | | 37.00 | | | | 37.58 | | | | | 37.00 | | | | 111.58 |
| Dues & Sub - 1&1 Internet | | | 214.00 | | | | | | | | 214.00 | | | | | 428.00 |
| Telephone CEO AT&T/Verizon | | | | | | | | | | | | | | | | - |
| | | | | | | | | | | | | | | | | - |
| Total Operation Expense | 360.31 | 7,029.74 | 2,520.77 | 3,476.28 | 335.00 | 5,541.51 | 2,182.58 | 576.28 | 1,000.00 | 8,069.61 | 214.00 | 337.00 | 1,876.28 | 7,026.51 | - - | 40,545.17 |
| **Inventory Purchases** | | | | | | | | | | | | | | | | - |
| Dalo | | 1,750.00 | | | | 1,500.00 | | | | | | 2,000.00 | | | | 5,250.00 |
| Misc Vendors | | 10,000.00 | | 10,000.00 | 10,000.00 | 15,000.00 | 12,000.00 | 10,000.00 | 7,500.00 | | | 5,000.00 | | | 2,500.00 | 82,000.00 |
| | | | | | | | | | | | | | | | | - |
| | | | | | | | | | | | | | | | | - |
| Inventory Purchase | - | 11,750.00 | - | 10,000.00 | 10,000.00 | 16,500.00 | 12,000.00 | 10,000.00 | 7,500.00 | - | - | 7,000.00 | - | - | 2,500.00 | 87,250.00 |
| **Estimated Total Expenses** | 6,850.85 | 35,681.63 | 10,283.53 | 58,731.68 | 25,165.29 | 77,153.85 | 23,821.96 | 22,181.97 | 15,455.40 | 82,197.05 | 31,565.29 | 18,326.42 | 8,331.68 | 14,954.25 | 17,351.29 | 424,017.34 |

## Estimated Cash Position Base Business

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | $ - | 56,149.15 | 69,487.52 | 59,203.99 | 102,472.31 | 77,307.02 | 147.97 | (4,673.95) | 101,164.04 | 183,708.64 | 158,511.59 | 124,948.30 | 108,619.83 | 100,268.20 | 85,333.95 | |
| DIP | 83,000.00 | - | - | 100,000.00 | - | - | - | 100,000.00 | - | - | - | | | | | 283,000.00 |
| Estimated Total Revenue | | 49,000.00 | | 0.00 | 0.00 | 0.00 | 19,000.00 | 28,000.00 | 93,000.00 | 35,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 229,000.00 |
| Estimated Total Expenses | (6,850.85) | (35,681.63) | (10,283.53) | (58,731.68) | (25,165.29) | (77,150.05) | (23,821.96) | (22,181.87) | (15,455.40) | (82,197.05) | (31,565.29) | (18,326.42) | (8,331.68) | (14,954.25) | (17,351.29) | (424,017.34) |
| Ending Cash Balance | $ 56,149.15 | $ 69,487.52 | $ 59,203.99 | $ 102,472.31 | $ 77,307.02 | $ 147.97 | $ (4,673.95) | $ 181,164.04 | $ 183,708.64 | $ 156,511.59 | $ 124,948.30 | $ 108,619.83 | $ 100,268.20 | $ 85,333.95 | $ 67,982.68 | $ 67,982.68 |

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Officer Compensation | | | | | | | | | | | | | | | | |
| CEO | | | | 20,000 | | | | 20,000 | | | | 20,000 | | | | 60,000.00 |

## New Program Initiatives

Health Care

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ISO 13485 Quality Assurance consultant USD 400,000 project | 10,000 | | | | 10,000 | | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 60,000.00 |
| Breast Cancer Diagnosis development USD 500,000 development | | | | | | 50,000 | | | 100,000 | | | | 150,000.00 |
| Sepsis diagnosis development USD 400,000 development | | | 50,000 | | | 100,000 | | | 100,000 | | | | 250,000.00 |
| breath capture tube USD 20,000 development | 1,000 | | | 5,000 | | | | | | | 10,000 | | 16,000.00 |
| Cash Consumption New Programs | 11,000 | 0 | 50,000 | 5,000 | 10,000 | 150,000 | 10,000 | 10,000 | 210,000 | 10,000 | 20,000 | 10,000 | 496,000.00 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Hope Street, Thirty-Fifth Floor, Los Angeles, California 90071-1406.

A true and correct copy of the foregoing document entitled (*specify*): OMNIBUS DECLARATION OF WILLIAM B. WITTMEYER IN SUPPORT OF DEBTOR'S "FIRST-DAY" MOTION will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) ___________ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____________, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) October 23, 2014 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

HON. PETER H. CARROLL, CHIEF JUDGE
United States Bankruptcy Court
Central District of California
1415 State Street, Suite 230/Courtroom 201
Santa Barbara, CA 93101-2511

☒ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 23, 2014 | Debbie A. Perez | /s/ Debbie A. Perez |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**DEBTOR**: - *VIA FEDERAL EXPRESS*
Electronic Sensor Technology, Inc.
William B. Wittmeyer, Chief Executive Officer and Chairman of the Board
1125-B Business Center Circle
Newbury Park, CA 91320

**OFFICE OF THE UNITED STATES TRUSTEE** - *VIA FEDERAL EXPRESS*
OUST-Santa Barbara
128 East Carrillo Street
Santa Barbara, CA 93101

**TWENTY LARGEST CREDITORS** – *VIA EMAIL*
White & Case LLP
Alex Alvarez
633 West Fifth Street
Suite 1900
Los Angeles, CA 90071
Telephone: 213.620.7808
E-Mail: akalvarez@la.whitecase.com

Flat Iron Capital
Customer Service
Post Office Box 712195
Denver, CO 80271
Telephone: 800.800.2767
E-Mail: customerservice@flatironcapital.net

Sherb & Co., LLP
Christine Ottavio
805 3rd Avenue
No. 902
New York, NY 10022
Telephone: 212.838.2652
E-Mail: infro@sherbcpa.com

East West Bank
Cardmember Service
Post Office Box 790408
Saint Louis, MO 63179
Telephone: 866.552.8855
Francis Chang
2655 Country Lane
Westlake Village, CA 91361
Telephone: 818.889.1995
E-Mail: changfrancis8@gmail.com

Greenberg Traurig, LLP
Janet Young
1900 University Avenue
Palo Alto, CA 94303
Telephone: 650.289.7813
E-Mail: youngja@gtlaw.com

CNA Representative
1100 Industrial Road
Suite 3
Post Office Box 1266
San Carlos, CA  94070
Telephone:  877.276.7507
E-Mail:  cidirectbill@cnacentral.com

Sage Software, Inc.
Customer Care Department
14855 Collections Center Drive
Chicago, IL  60693
Telephone:  888.721.8989
E-Mail:  business care.mme@sage.com

Da-Lo Engineering
Terri
3696 Lavery Court
Unit 19
Newbury Park, CA 91319
Telephone:  805.498.5016
E-Mail:  soccer4t@aol.com

Continental Stock Transfer & Trust
Sally William
17 Battery Place
Eighth Floor
New York, NY 10004
Telephone:  212.509.4000
E-Mail:  swilliam@continentalstock.com

Worldwide Express
Kim Hames - A/R Department
850 Hampshire Road
Suite S
Westlake Village, CA 91361
Telephone:  866.993.3877
khames@wwexusa.com

Warnick Design
Michael Dean Warnick
700 West E Street
No. 1906
Northridge, CA 91325
Telephone: 760.650.9413
E-Mail: michael@warnickdg.com

Liberty Mutual Insurance
Billing Center Department
Post Office Box 85834
San Diego, CA 92186
Telephone: 866.290.2920
E-Mail: cipacificregioncldirectbill@libertymutual.com

Federal Express
U.S. Collections Department
Post Office Box 7221
Pasadena, CA 91109
Telephone: 888.780.4580
Telephone: 877.668.5632
E-Mail: vmcknight@fedex.com

Airgas-West, Inc.
Customer Representative
Post Office Box 7423
Pasadena, CA 91109
Telephone: 562.766.8967
E-Mail: cermaniqua.young@airgas.com

State Board of Equalization
Post Office Box 942879
Sacramento, CA 94279-6001
E-Mail: SpecialOperationsBranch@boe.ca.gov

**COUNSEL TO HALFMOON BAY CAPITAL, INC.** – *VIA EMAIL*
Daniel J. Weintraub, Esq.
Weintraub & Selth, APC
11766 Wilshire Blvd., Ste. 1170
Los Angeles, CA 90025
P: (310) 207-1494
F: (310) 442-0660
Email: Dan@wsrlaw.net

**UTILITIES**:
1 N 1 Hosting – *VIA FEDERAL EXPRESS*
701 Lee Road
Suite 300
Wayne PA 19087

Excel Micro – *VIA EMAIL*
505 Kedron Avenue
Folsom PA 19033
info@excelmicro.com

Verizon California – *VIA FACSIMILE*
Post Office Box 920041
Dallas TX 75392
Fax: (325) 949-6916

Vonage/Vocalcity – *VIA FEDERAL EXPRESS*
1375 Peachtree Street NE
Suite 200
Atlanta GA 30309